## UNITED STATES v. THOMAS.

### No. 21532.

District Court, W. D. Kentucky,
at Louisville.

April 7, 1943.

548

Eli H. Brown, III, U. S. Atty., of Louisville, Ky., for United States of America.

Brent C. Overstreet, of Louisville, Ky., for defendant.

MILLER, District Judge.

The defendant, Alpha Louise Thomas, was indicted for perjury in violation of Section 398, Title 18 U.S.C.A. The matter is before the court on (1) her motion to strike certain allegations from the indictment; (2) a demurrer to the indictment, and (3) a plea in abatement.

At a hearing on said pleas the following facts were testified to by the defendant: The defendant was arrested by the city police about 9 p. m. on December 24, 1942 while in a parking lot on Fifth Street in Louisville, Kentucky, in company with two soldiers. The policemen would not tell her at the time of the charge against her, but took her to police headquarters where she was charged with vagrancy and disorderly conduct. A police captain told her that unless she co-operated with the police she would be locked up every time she appeared on the street. After making bond for appearance in the city police court she went to the office of the Federal Bureau of Investigation where she was questioned at length from about 12 o'clock midnight until approximately 4:30 a. m. by Federal agents about her relations with one John H. Weber who was being investigated for violation of the Mann Act, 18 U.S.C.A. § 397 et seq. At that time she made a written statement involving Weber. Thereafter over a period of six weeks she was called to the office of the F. B. I. and interviewed by Federal agents some five or six times. As a result of these interviews she signed an additional written statement on January 18, 1943, and a third written statement on February 4, 1943 giving more details as to times, dates and places where the transportation and immoral relations took place. She claims to have signed these statements because of fear of future arrests. She was not required to appear in the city police court to answer the charges of vagrancy and disorderly conduct placed against her on December 24th. A warrant for the arrest of John H. Weber was sworn out before the United States Commissioner charging Weber with transportation of the defendant in interstate commerce for immoral purposes, and the defendant was subpoenaed to testify at the hearing on February 9, 1943. This hearing was continued until February 15, 1943 because of the inability of the marshal to serve the subpoena, and it was again continued to February 18, 1943 because of the absence of the Assistant U. S. Attorney in the trial of a case at Owensboro, Kentucky. The defendant appeared for the hearing on February 15, 1943, at which time she told F. B. I. agent Faulkner that her previous written statements were not

true. At that time she was arrested and put under bond to appear at the hearing on February 18th. When she appeared on February 18th she again told F. B. I. Agent Faulkner and the Assistant District Attorney that her statements were not true. The Assistant District Attorney thereupon moved for the discharge of Weber, which motion was sustained by the U. S. Commissioner. The defendant was then subpoenaed to appear before the Grand Jury which convened in Louisville, Kentucky, on March 2, 1943. She stated that she was questioned by the grand jurors, testified voluntarily and told the truth; that although she was frightened when she was before the Grand Jury neither any member of the Grand Jury nor any Federal officer threatened her in any way excepting the statement of one Federal officer who told her that she would get time if she didn't stick to her first story. In appearing before the Grand Jury she was not advised by the District Attorney or by any one of her constitutional privilege against self-incrimination or that what she said would be used against her. She did not consult an attorney. In her testimony before the Grand Jury she testified to facts in absolute contradiction to the facts previously given by her to the F. B. I. agents in the three written statements above referred to. On a later day the Grand Jury returned the present indictment against her for perjury.

The motion to strike and the demurrer do not appear to be seriously pressed. The indictment sets out part of the defendant's testimony before the Grand Jury consisting of eighteen questions and answers directed to the defendant's practice of prostitution, and to her visits to Ohio and Florida with special reference to Weber's participation in those activities. It charges that these answers were untrue and known to be so by the defendant at the time. The motion to strike and the demurrer raise the same point, namely, that the questions and answers are immaterial and incompetent and would serve no purpose except to prejudice the minds of the jury against the defendant in an undue manner. The questions propounded to the defendant dealt directly with the charge which it was considering against Weber, and accordingly were material and competent in that investigation. If they were answered untruthfully by the defendant, the questions and answers constitute the very essence of the present indictment. The motion to strike and the demurrer are without merit and are overruled.

The plea in abatement alleges substantially the facts produced at the hearing above referred to and charges that by reason of such facts the defendant was compelled to testify against her will, which she would not have done if she had been advised of her constitutional rights against self-incrimination, or that such testimony could be used as the basis of an indictment against her. She claims that the failure on the part of the Government to so advise her violated the rights guaranteed to her by the Fifth Amendment to the United States Constitution, and testimony so given can not legally be the basis for the present indictment.

The defendant relies upon the case of Counselman v. Hitchcock, 142 U.S. 547, 12 S.Ct. 195, 35 L.Ed. 1110. This case held that an examination of a witness before a Grand Jury was a criminal case within the meaning of the Fifth Amendment to the Constitution of the United States, which provides that "No person * * * shall be compelled in any Criminal Case to be a witness against himself, * * *," and that such a witness is entitled to decline to testify about facts which could be used for the purpose of securing an indictment against such a witness. Counsel contends that under the ruling of the Supreme Court in United States v. Holte, 236 U.S. 140, 35 S.Ct. 271, 59 L.Ed. 504, L.R.A.1915D, 281, a woman can be guilty of violation of the Mann Act, or guilty of conspiring to violate the Mann Act, even though she be the victim, and that therefore the answers to the questions propounded to her before the Grand Jury would lead to self-incrimination and would not have to be answered. He relies upon the decisions in United States v. Edgerton, D.C.Mont.1897, 80 F. 374 and United States v. Bell, C.C.W.D.Tenn.1897, 81 F. 830 as establishing the rule that unless a witness who is ignorant of his constitutional right to remain silent in respect to self-incriminating testimony is informed of that right before testifying before a Grand Jury, so that he may protect himself or consult counsel if he desires, the examination before the Grand Jury can not be used in evidence against him even on an indictment for false swearing. The cases so relied upon are not applicable to the present proceeding.

550

The rule announced in Counselman v. Hitchcock was further discussed by the Supreme Court in the later case of Brown v. Walker, 161 U.S. 591, 16 S.Ct. 644, 40 L.Ed. 819, where it was pointed out that although the general rule was well established, yet there were certain classes of cases which had always been treated as not falling within the reason of the rule, and, therefore, constituting apparent exceptions; that these exceptions are based upon the idea that, if the testimony sought can not possibly be used as a basis for, or in aid of, a criminal prosecution against the witness, the rule ceases to apply, its object being to protect the witness himself and no one else. As examples of such exceptions the opinion refers to cases where the prosecution would be barred by the statute of limitations, where the witness has already received a pardon, where a statute grants complete immunity with respect to such testimony, and where the witness himself elects to waive his privilege. The holding of the Supreme Court in United States v. Holte, supra, was also given further and more careful consideration by the Supreme Court in its later decision in Gebardi v. United States, 287 U.S. 112, 53 S.Ct. 35, 77 L.Ed. 206, 84 A.L.R. 370, which held that in cases of transportation effected with the mere consent of the woman, the woman herself was not guilty of either the substantive offense of violating the Mann Act or of conspiring to so violate the Act. The combined result of the decisions of Counselman v. Hitchcock, supra, and United States v. Holte, supra, relied upon by the defendant is therefore completely changed by the combined results of the Supreme Court's later rulings in Brown v. Walker, supra, and Gebardi v. United States, supra. Since the testimony of the defendant before the Grand Jury would not tend to incriminate her, in that an indictment would not lie against her for either a violation of the Mann Act or conspiring to violate the Mann Act, she would not be entitled to invoke the constitutional privilege of refusing to testify.

The witness had no unqualified right to refuse to testify. It was held in Mason v. United States, 244 U.S. 362, 37 S.Ct. 621, 61 L.Ed. 1198, that the Fifth Amendment does not relieve a witness from answering questions directed to him merely on his own declaration or judgment that an answer might incriminate him; that whether he must answer is to be decided by the trial court in the exercise of its discretion, and unless there is reasonable ground, as distinct from a remote or speculative possibility, to apprehend that a direct answer may prove dangerous to the witness an answer should be compelled. The answers to be given by the witness to the questions asked even if given in accordance with her previous written statements, would not have incriminated her in any way. Although they had a tendency to bring the witness into disrepute, such a result does not justify a refusal by the witness to answer. Brown v. Walker, supra. If the defendant had been advised of her constitutional privilege against self-incrimination, and had asserted it when questioned by the Grand Jury, this court would have been required to rule that the claim was not justified and that the questions be answered. The testimony was properly heard by the Grand Jury. The Fifth Amendment may at times excuse a witness from testifying, but when testimony is properly received it is not a protection against the charge of perjury.

The defendant claims that her testimony before the Grand Jury was the truth. What she said did not in any way incriminate either her or Weber. She testified in obedience to a subpoena. She is in the same position as is every witness who in answer to a subpoena testifies before a Grand Jury about matters which are not self-incriminating. She does not claim that she committed perjury in order to avoid self-incriminating testimony. If she testified truthfully, as she now claims, there is no merit whatsoever in her contention that she was forced to give self-incriminating testimony.

The two early district court cases relied upon by defendant, namely, United States v. Edgerton, supra, and United States v. Bell, supra, might possibly be distinguished from the present case on their facts as in each of them the witness testifying was the person under investigation in the inquisitorial examination, while in the present case, the person under investigation by the Grand Jury was Weber rather than the witness who was testifying. This is shown by the fact that following the three statements given by the defendant to the F. B. I. agents a warrant was taken out against Weber alone, and the proceedings before the Commissioner involved him and not the present defendant.

But irrespective of that fact, the rule announced by those two cases in 1897 has apparently not been followed in the succeeding years by numerous courts which have had the same question presented to them. It has been held many times since that the privilege of silence afforded by the Fifth Amendment is solely for the benefit of the witness and is deemed waived unless invoked; that the privilege may not be relied upon and will be deemed waived if not in some manner fairly brought to the attention of the tribunal which must pass upon it. U. S. ex rel. Vajtauer v. Commissioner of Immigration at Port of New York, 273 U.S. 103, 47 S.Ct. 302, 71 L.Ed. 560; United States v. Murdock, 284 U.S. 141, 52 S.Ct. 63, 76 L.Ed. 210, 82 A.L.R. 1376; Shushan v. United States, 5 Cir., 117 F.2d 110, 117, 133 A.L.R. 1040, certiorari denied 313 U.S. 574, 61 S.Ct. 1085, 85 L.Ed. 1531, rehearing denied 314 U.S. 706, 62 S.Ct. 53, 86 L.Ed. 564; Nicola v. United States, 3 Cir., 72 F.2d 780; Kolbrenner v. United States, 5 Cir., 11 F.2d 754, certiorari denied 271 U.S. 677, 46 S. Ct. 489, 70 L.Ed. 1146; United States v. Wetmore, D.C.W.D.Pa., 218 F. 227; United States v. Mary Helen Coal Corp., D.C.E.D.Ky., 24 F.Supp. 50; United States v. Burk, D.C.Del., 41 F.Supp. 916. The failure of the defendant in the present case to claim the asserted privilege must under the foregoing decisions be considered as a waiver of the privilege which is now asserted.

The defendant's plea in abatement is held insufficient, and the action will be assigned for a plea and a trial.