**UNITED STATES v. ACCARDO.**

Civ. A. No. 1061–52.

United States District Court
D. New Jersey.

July 10, 1953.

Grover C. Richman, Jr., U. S. Atty., Newark, N. J., by Edward V. Ryan, Asst. U. S. Atty., Jersey City, N. J., for plaintiff.

Anthony A. Calandra, Newark, N. J., for defendant.

HARTSHORNE, District Judge.

In these proceedings plaintiff asks the revocation of defendant's naturalization "on the ground of fraud or on the ground that such order and certificate of naturalization were illegally procured." Title 8 U.S.C.A.Aliens and Nationality, Sec. 738 (a).[1] Under the applicable statute petitioner, in the naturalization proceeding, as the spouse of a United States citizen residing in this country prior to filing his naturalization petition, must have been for two years prior thereto, and still be at the time of the hearing thereon, "a person of good moral character, attached to the principles of the Constitution of the United States, and well disposed to the good order and happiness of the United States." Ibid. Sec. 707, 711. The grounds alleged by plaintiff for revocation of such naturalization, of fraud, on the one hand, and of illegality, on the other, are based substantially on the fact that petitioner, both in his petition for naturalization and when questioned personally in that regard, while admitting certain difficulties with the law, failed to disclose a series of others, including both arrests and convictions, these showing that prior to his naturalization he had been frequently in conflict with the law enforcement authorities for some fifteen years.

More specifically, defendant, during naturalization, admitted his arrest for conspiracy in 1937 for a crime committed in Camden, N. J., in 1934, and his conviction therefor on November 6, 1941, for which he was given a two-year, suspended sentence, probation three years, $1,000 fine. He further admitted his arrest in New York City in 1933 for a narcotics violation, on which the complaint had been dismissed.

But on the other hand, defendant told the Naturalization officials in these proceedings that the above constituted his sole criminal record. This was untrue. Defendant now admits it to be the fact that, in addition to the above arrests and conviction, he had also been arrested and convicted as follows:

1. On June 8, 1930 he had been arrested in Irvington, N. J. under the name of "Sam Accardi", as a disorderly person, convicted of said charge, and fined $25.

2. On July 12, 1933 he had been arrested in Jersey City, N. J. under the name of "Guiseppi Accarobi", as a disorderly person, convicted on said charge, and received a suspended sentence.

3. On September 24, 1940, in Newark, defendant had been arrested and convicted under the name of "Sam Accardi", for failure to keep accurate records of wages and hours of his employees, for which he was fined $50. However, since the Government discovered this, no claim is made as to fraud in this regard, as distinguished from its bearing on illegality, as hereafter noted. Nor does the Government claim fraud because of the arrest of "Sam Accardi" November 26, 1926 in Newark for assault and battery. For while defendant admitted this was he, there seems to be real question, if this was not an arrest of his cousin by the same name.

4. In addition to the above criminal record preceding the filing of his petition for naturalization, defendant was also arrested October 25, 1944, some months after his naturalization petition was filed, but before granting of the decree, on an indictment charging that from January 1, 1943 to September 30, 1943 he, with others, had conspired to defraud the United States of revenue through the operation of an unregistered still. Indeed, at the time he was naturalized defendant was still under bail on this charge.

Defendant states the reason he failed to

---

1. While these proceedings were initiated subsequent to the enactment of the McCarran Act on June 27, 1952, Chapter 477, Title 1, Sec. 101, 66 Stat. 166, 8 U.S.C.A. § 1101, the repealer and saving clauses of the McCarran Act provide that the instant proceedings shall be governed by the above preceding act. Ibid. Sec. 403(b), 405(a), 407, 8 U.S.C.A. §. 1101 note.

disclose this arrest just before the decree, when questioned in regard to his arrest and conviction record, was because he had been advised by his lawyer that this indictment was to be dismissed as to him. However, when so questioned, not only was he still under bail, but the indictment against him remained in effect till July 7, 1945, some six months after he obtained his naturalization decree. While, for the above reason, he may not have considered this arrest a serious matter, he undoubtedly knew of it, and wilfully failed to disclose it. Had he disclosed it, unquestionably he would not have been naturalized at that time, for this reason alone. U. S. v. Palmeri, D.C.E.D. N.Y.1943, 52 F.Supp. 226. So the materiality of this wilful nondisclosure is self-evident.

■ Defendant claims his 1933 conviction is a nullity because of an unreported decision in 1934 by the New Jersey Supreme Court in State v. Lanzetta, holding the 1933 Supplement to the Disorderly Persons Act invalid. But in the first place, defendant's conviction stands of record, unattacked. In the next place, the Lanzetta case applies solely to a supplement to the old Disorderly Persons Act, applicable to other offenses than loitering, whereas defendant was convicted of being a disorderly person here because of "loitering". And loitering is made an offense, not by the above invalid supplement, but by other sections of the Disorderly Persons Act, in effect long before the invalid 1933 Supplement, and still in effect.[2] Defendant further claims this conviction was known to the authorities when he entered this country the second time, at Montreal, several years earlier than his naturalization. But this information was never known to the Naturalization authorities, but only to the Department of State, which issued his visa, and to an entirely separate branch of the Immigration Office, having nothing to do with naturalization. The Naturalization authorities cannot be charged with notice of what they did not, in fact, know, when this fact was known only to such widely different branches of the Government. U.

S. v. Riggins, 9 Cir., 1933, 65 F.2d 750; U. S. v. Depew, 10 Cir., 1938, 100 F.2d 725; Halverson v. U. S., 7 Cir., 1941, 121 F.2d 420.

■ Defendant further claims that, since all the above arrest and conviction data was known to the U. S. Probation Office, the U. S. Naturalization officials should be charged with notice of same, even though they did not know it in fact. This is on the tenuous theory that defendant's mere mention during the naturalization proceedings of the fact that he had been put on probation for an entirely different crime, put the Naturalization officials on notice of everything which all the files of the U. S. Probation Office, not the Naturalization Office, contained. If this contention were correct, then, since the Probation Office is an arm of this Court, this Court, which naturalized defendant, would, a fortiori, not have been at all misled by defendant's failure to disclose any arrest or conviction which appeared in its probation records. In short, when questioned as to his record, defendant need have disclosed nothing. This argument answers itself.

■ All the above, save the 1926 and 1940 records not relied on by plaintiff, go to the question of defendant's fraud as grounds for the revocation of his naturalization. Thus we find that the Naturalization court had before it, not a man who had had but a single conviction, and another arrest, as it supposed, but a man who had frequently been in trouble with the authorities over the course of some fifteen years prior to the time of his naturalization. It was defendant's duty to disclose an arrest, as well as a conviction, in order that the Government might investigate before granting the decree. Gaglione v. U. S., 1 Cir., 1929, 35 F.2d 496; In re Paoli, D.C. Cal.1943, 49 F.Supp. 128. That defendant's wilful failure to disclose this situation to the authorities had a material effect upon the action of the Naturalization officials and the Court in its decision to grant the decree, is undoubted. Particularly is this the case, since even the limited dis-

2. Originally P.L.1912, c. 114, § 1, P.L. 1924, c. 173, § 1, now N.J.S.A. 2A:170–30.

closures of the defendant were not passed on by the immigration officials, even tentatively, but referred to the Court for its own decision thereon.

■ We turn now to the question of illegality, i. e., whether the naturalization certificate was procured illegally, in that the defendant, for two years prior to filing his naturalization petition, and through the time of his obtaining his decree, had not been "a person of good moral character, attached to the principles of the Constitution of the United States, and well disposed to the good order and happiness of the United States." First we bear in mind that it was during this period that defendant wilfully concealed from the governmental authorities his above arrests and convictions, which obviously had such a material bearing upon the Court's determination to grant him his naturalization decree. These fraudulent acts per se revealed his character as that of one willing to defraud others, even including the parens patriae, for his own ends. Since we here consider defendant's character only, defendant's contentions as to notice to the Government as to some of this record becomes irrelevant, even if this contention were not fallacious. It is too clear for argument that the above fraud of itself shows defendant was not then "of good moral character, attached to the principles of the Constitution of the United States, and well disposed to the good order and happiness of the United States." Del Guercio v. Pupko, 9 Cir., 1947, 160 F.2d 799, 800; Stevens v. U. S., 7 Cir., 1951, 190 F.2d 880; Gaglione v. U. S., supra. How can a person claim to be of "good moral character" or "well disposed to the good order and happiness of the United States" at the very time he is seeking to defraud the United States, in a matter of moment both to him and to the country?

In addition thereto, defendant was convicted June 1, 1951, after his naturalization, in the United States District Court for the Southern District of New York, on his plea of guilty to conspiring to operate an unregistered still from February 1, 1943 to January 5, 1944. That this was a serious offense may be judged from the fact that his conviction resulted in his being sentenced to prison for a year and a day, a sentence which he served, and that he was also fined the sum of $5,000. Defendant has thus admitted on the record, that for a period of almost a year, and up to within three weeks of the day he filed his petition for naturalization, he had been engaged in a conspiracy to defraud the United States. How can such actions be deemed consonant with being "a person of good moral character, attached to the principles of the Constitution of the United States, and well disposed to the good order and happiness of the United States"? U. S. v. Palmeri, supra, [52 F.Supp. 227]; In re Taran, D.C. Minn.1943, 52 F.Supp. 535, 539.

■ This plea of guilty, entered in a proceeding between the United States Government and defendant, the very parties now before the Court, on the very same issue now before the Court collaterally, i. e., his guilt of such conspiracy, obviously constitutes an estoppel of record, which he cannot now be heard to deny, else there would be no end of litigation. Local 167 of International Brotherhood of Teamsters, Chauffeurs, Stablemen & Helpers of America, v. U. S., 1934, 291 U.S. 293, 54 S.Ct. 396, 78 L.Ed. 804; Emich Motors Corp. v. General Motors, 1950, 340 U.S. 558, 568, 71 S.Ct. 408, 95 L.Ed. 534; U. S. v. Bower, D.C.E.D.Tenn.1951, 95 F.Supp. 19; U. S. v. American Packing, D.C.N.J. 1953, 113 F.Supp. 223; Restatement Judgments, Sec. 68 (1942). The few authorities cited to the contrary are actually not opposed to this rule. They are either cases of convictions in State courts, where the parties in the two proceedings are therefore not identic, as they are here, or where the original adjudication was an acquittal, not a conviction. In an acquittal, the failure of the Government to prove guilt beyond a reasonable doubt of course does not establish the fact that guilt may not exist by the greater weight of the evidence, the requisite burden in the subsequent civil proceeding. Hence there is no estoppel of record. On the other hand, where the result is a conviction, i. e., where guilt is es-

tablished beyond a reasonable doubt, then, between the same parties, guilt has been established by the greater weight of the evidence, a fortiori.

■■ Defendant finally claims that he could not have been expected to tell the Immigration authorities of any or all of this undisclosed criminal record and bad character, since to do so would have been violative of the Fifth Amendment.[3] The answer to this novel contention is clear. In the first place, defendant never was "compelled" to be a witness against himself in the above regard at all. No one forced him to apply for naturalization. This action he took of his own choice. In the next place, as to the above conviction for which he was sent to prison for a year and a day, since the conviction itself occurred after his naturalization proceeding, obviously he was not even questioned in that regard, during such proceedings, and therefore was not compelled to testify during such proceedings in that regard. The proof in that regard comes not from his lips, but from the records of the United States District Court for the Southern District of New York. Again, as to this preceding record, defendant disclosed that part which he chose. But, in doing so, he did not rely on the Fifth Amendment. Thereby he waived it. U. S. v. Thomas, D.C.Ky.1943, 49 F.Supp. 547, 551; Tomlinson v. U. S., 1937, 68 App.D.C. 106, 93 F.2d 652, 656, 114 A.L.R. 1315, certiorari denied Pratt v. U. S., 303 U. S. 642, 58 S.Ct. 645, 82 L.Ed. 1107; U. S. ex rel. Vajtauer v. Com'r, 1927, 273 U.S. 103, 112, 47 S.Ct. 302, 71 L. Ed. 560; U. S. ex rel. Zapp v. District Director, 2 Cir., 1941, 120 F.2d 762, 764. Yet again, when Congress authorized aliens to become naturalized it offered this, the greatest gift in the power of the Government to bestow, upon certain conditions. One of these conditions was a full, frank disclosure of the applicant's character, including his criminal record. This gift he was to receive only upon compliance with that condition. When he ap-

plied for such gift, his application constituted his agreement to abide by such condition. In other words, when defendant applied for naturalization, he agreed to waive any right to rely upon the above provisions of the Fifth Amendment, in order to give the United States Government the information which Congress insisted was necessary in all naturalizations. That such constitutional provisions may be waived is settled law. U. S. v. Thomas, supra; Tomlinson v. U. S., supra; U. S. ex rel Vajtauer v. Com'r, supra; U. S. ex rel. Zapp v. District Director, supra; Raffel v. U. S., 1926, 271 U.S. 494, 499, 46 S.Ct. 566, 70 L.Ed. 1054.

The recent case of U. S. v. Kahriger, 1952, 345 U.S. 22, 32, 73 S.Ct. 510, involving a somewhat similar situation, is to the same effect.

■ It is thus clear that by reason of defendant's false statements and concealment of material facts relating to his criminal record, the decree of naturalization of defendant entered in this Court on or about January 22, 1945 was fraudulently procured.

It is further clear that, because of the defendant's false and fraudulent misrepresentations made to the Immigration authorities during the course of his naturalization proceedings, and because of the fact that immediately prior to the filing of his naturalization petition he had been engaged in a serious conspiracy to defraud the United States, defendant had not been, at and prior to naturalization, for the requisite period, "a person of good moral character, attached to the principles of the Constitution of the United States, and well disposed to the good order and happiness of the United States." Thus defendant's naturalization decree was illegally procured.

Therefore, both on the ground of fraud and on the ground that the order and certificate of naturalization of defendant were illegally procured, said order will be re-

3. "* * * nor shall be compelled in any criminal case to be a witness against himself". U.S.Const. Amendment V.

voked and set aside and said certificate will be cancelled.

The facts herein stated and the conclusions of law herein expressed shall be considered the findings of fact and the conclusions of law required by Fed.Rules Civ. Proc. rule 52, 28 U.S.C.