Richard O. J. MAYBERRY

v.

Harry SOMNER et al.

Civ. A. No. 74–1270.

United States District Court,
E. D. Pennsylvania.

Nov. 28, 1979.

---

Richard O. J. Mayberry, West Chester, Pa., pro se.

Lawrence Barth, Asst. Atty. Gen., Philadelphia, Pa., for defendants.

## OPINION

LUONGO, District Judge.

This is a *pro se* action under the Civil Rights Act of 1871, 42 U.S.C. § 1983, for injunctive and declaratory[1] relief and damages. Plaintiff is a state prisoner. Defendants Somner and Shaefer were guards at the State Correctional Institution at Graterford. Jurisdiction is based upon 28 U.S.C. § 1343(3). The action is before me on defendants' motions to dismiss, Fed.R.Civ.P. 12(b), and for summary judgment, Fed.R. Civ.P. 56. The record consists of an affidavit and certain state court documents submitted by defendants; plaintiff has not submitted any evidence.

Mayberry asserts claims for relief on the basis of three incidents that occurred during his imprisonment. First, Mayberry

---

1. *See* Declaratory Judgment Act, 28 U.S.C. §§ 2201–02.

alleges that the defendants attempted to murder him. Specifically, the complaint alleges that on January 21, 1974, under orders of Stewart Werner, Commissioner of the Pennsylvania Bureau of Corrections, "and other employees of the Bureau," defendants Harry Somner and William Shaefer, prison guards at the State Correctional Institution at Graterford, attempted to kill plaintiff while transporting him from the United States Courthouse in Philadelphia to Chester County Farms Prison in West Chester, Pennsylvania; that the guards drove him to an isolated location in Chester County, where Shaefer, at Somner's direction, pulled a revolver and attempted to shoot Mayberry; that in self-defense, Mayberry lunged at Shaefer and pushed aside the gun, causing two shots fired by Shaefer to hit Somner in the head; that the struggle continued between Shaefer and Mayberry until Shaefer abandoned the murder attempt upon seeing another car approaching; that Mayberry was then taken into custody by the Pennsylvania State Police and was "falsely accused" of shooting Somner; and that the murder attempt was in retaliation for Mayberry's prosecution of a civil rights action against the Bureau.

The other two bases of plaintiff's suit are his transfer from the Chester County prison to the State Correctional Institution at Dallas, Pennsylvania, while he was awaiting trial in Chester County, and an alleged conspiracy involving Commissioner Stewart Werner under which Mayberry contended that he was in danger of being "sent to Farview State Hospital . . . . to be confined in a maximum security prison ward, forcibly drugged, beaten, tortured and murdered."

Mayberry charges that defendants' actions subjected him to cruel and unusual punishment and deprived him of due process of law, equal protection of the laws, the rights to counsel and access to the courts, and freedom of speech.

In an order dated May 30, 1974,[2] I granted plaintiff's motion to proceed in forma pauperis and ordered defendants Somner and Shaefer to respond to the complaint. Commissioner Werner was also named as a defendant, but was a resident of the Western District of Pennsylvania, and therefore venue had been improperly laid in this district as to him.

On July 11, 1974, Mayberry was indicted by a Pennsylvania grand jury for attempted murder, assault, attempted escape, and various firearm offenses,[3] all arising out of the events that occurred on January 21, 1974, while Mayberry was being transported as described above. On April 17, 1975, plaintiff appeared before Judge D. T. Marrone of the Chester County Court of Common Pleas and pleaded guilty to attempted murder, two counts of assault, possessing instruments of a crime, and attempted escape.[4] The pleas were entered as part of a plea bargain in which the Commonwealth agreed to request dismissal of the remaining counts of the indictment against plaintiff and to request dismissal of all charges pending against plaintiff's brother, James Daniel Mayberry, for his alleged part in Mayberry's attempted escape.[5]

On August 13, 1974, defendants filed a motion to dismiss, contending, inter alia, that plaintiff lacked standing to assert the

2. Doc. No. 2, filed June 3, 1974, *adopting* Report and Recommendation of Magistrate Powers, attached to Doc. No. 2, filed May 28, 1974.

3. Indictment, *Commonwealth v. Mayberry*, Criminal No. 184C, Term 1974 (C.P. Chester, approved by grand jury, July 11, 1974), attached as Exhibit A to Memorandum of Law in Support of Defendants' Motion for Summary Judgment, Doc. No. 11. The ten counts of the indictment were (1) attempted murder, (2) aggravated assault, (3) assault with a deadly weapon, (4) "Assault by Prisoner", (5) "Possessing instruments of Crime", (6) carrying an

unlicensed firearm, (7) altering or obliterating marks of identification on a firearm, (8) attempted escape, (9) obtaining and possessing implements for escape, and (10) possession of a firearm while a convict.

4. A transcript of the proceedings is attached as Exhibit B to Doc. No. 11. Plaintiff pleaded guilty to the first, second, fourth, fifth, and eighth counts of the indictment.

5. *Commonwealth v. Mayberry*, Criminal No. 538C, Term 1974 (C.P. Chester).

Farview State Hospital aspect of his case; plaintiff failed to state a claim upon which relief could be granted; and abstention was required because a state criminal action was pending under the July 11 indictment. On October 14, 1975, following Mayberry's guilty plea, defendants filed a motion for summary judgment, renewing the standing contention and asserting that defendants were entitled to judgment on the attempted murder claim on the basis of the guilty plea and the doctrine of collateral estoppel. Consideration of these motions was delayed pending resolution of other matters bearing on whether I should be the judge in this case.[6] There was additional delay due to Mayberry's failure to respond to outstanding motions. Those matters having been resolved, I shall now consider defendants' motions. Because matters outside the pleadings have been presented, I shall treat some aspects of the August 13, 1974 motion to dismiss as a motion for summary judgment. See Fed.R.Civ.P. 12(b).

First, the defendants argue that Mayberry has failed to state a claim upon which relief can be granted with respect to his transfer from Chester County Prison to the State Correctional Institution at Dallas. Mayberry does not claim that he had a due process right to a hearing before being transferred to Dallas. See, e. g., Meachum v. Fano, 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976). Rather, he argues that the transfer violated his right to counsel under the Sixth Amendment, because he was awaiting trial on criminal charges in Chester County at the time, and his transfer hampered his ability to cooperate with his lawyer to prepare a defense.

■ The Commonwealth has the undoubted power to transfer prisoners in its custody. United States ex rel. Verde v. Case, 326 F.Supp. 701, 704 (E.D.Pa.1971). The question in this case is whether Mayberry's transfer so interfered with his ability to communicate with counsel that under the circumstances it rose to the level of a constitutional deprivation. Although Mayberry asserts in conclusory fashion that the transfer denied him his right to counsel, he does not allege any specific instances in which he had difficulty communicating with counsel, nor any specific ways in which his transfer hindered him in preparing his defense. A civil rights complaint which makes only broad and conclusory allegations and fails to state facts in support of its conclusions is subject to dismissal, notwithstanding the liberal rules of pleading that prevail in a civil rights action brought by a prisoner. Gray v. Creamer, 465 F.2d 179, 182 n.2 (3d Cir. 1972); Negrich v. Hohn, 379 F.2d 213, 215 (3d Cir. 1967). In this context, I agree with the court in Wells v. McGinnis, 344 F.Supp. 594, 596 (S.D.N.Y. 1972) that mere transfer to another institu-

---

6. Plaintiff is a noted expert litigator (although not law school-trained) who has filed a number of pro se actions in this and other courts. Under the Local Rules of Procedure, all "related cases" are assigned to the same judge (E.D.Pa. R.Civ.P. 3(d)(1)), and "[a]ll habeas corpus petitions filed by the same individual" and "[a]ll pro se civil rights actions by the same individual" are "deemed related." (E.D.Pa.R.Civ.P. 3(c)(3)(C)). Pursuant to this rule, almost all of the habeas corpus and civil rights actions filed by plaintiff in this court have been assigned to me.

On March 5, 1975, plaintiff filed a motion to transfer the present case to a different judge, attacking the Rule 3 assignment procedure as an unconstitutional deprivation of plaintiff's rights to due process and equal protection. I referred that motion to the Court's Calendar Committee.

On April 11, 1975, before the Calendar Committee acted on plaintiff's motion to transfer, plaintiff filed an action against me personally, alleging that my disposition of certain cases previously filed by plaintiff deprived him of his civil rights. Judge Gerhard A. Gesell of the United States District Court for the District of Columbia was assigned to hear the case (see 28 U.S.C. § 292(d)), and, on July 17, 1975, he dismissed the action with prejudice. Mayberry v. Luongo, Civil No. 75–1055 (E.D.Pa., July 17, 1975), appeal dismissed mem., No. 75–2175 (3d Cir., Mar. 23, 1976).

On November 5, 1976, the Calendar Committee Chairman, Judge VanArtsdalen, and members, Judges Weiner and Broderick, entered an order dismissing plaintiff's motion to transfer this action to another judge. The order was accompanied by a memorandum opinion by Judge VanArtsdalen. Docs. No. 13–14, filed Nov. 8, 1976.

No other matter pertaining to my assignment to hear this case is pending, and no grounds for recusal have been presented.

tion while legal proceedings are pending does not, in the absence of more specific allegations of interference with counsel, constitute a deprivation of civil rights. Mayberry therefore has stated no claim predicated solely on his having been transferred to Dallas at a time when charges were pending against him in Chester County.

Second, the defendants argue that Mayberry's claims under the First, Eighth, and Fourteenth Amendments, arising out of the alleged conspiracy to transfer him to Farview State Hospital, should be dismissed for failure to comply with the threshold requirement of Article III of the Constitution, namely, that there be an actual case or controversy capable of adjudication.[7] In both their motion to dismiss and their motion for summary judgment the defendants contend that because Mayberry made no allegation in his complaint that he was in fact transferred to Farview, and because since the filing of his complaint he has not been transferred to Farview, he has at best posed a hypothetical possibility of injury that is insufficient to meet the requirements of Article III.

Article III requires that those who seek to invoke the jurisdiction of the federal courts must allege an actual case or controversy. *O'Shea v. Littleton,* 414 U.S. 488, 493, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974); *Flast v. Cohen,* 392 U.S. 83, 94–101, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968). To meet this requirement, plaintiffs seeking injunctive relief in federal court must allege actual or imminent injury, *O'Shea, supra,* 414 U.S. at 493, 94 S.Ct. 669, and the injury must be "real and immediate," not "conjectural" or "hypothetical." *Golden v. Zwickler,* 394 U.S. 103, 109–110, 89 S.Ct. 956, 22 L.Ed.2d 113 (1969).

Here, Mayberry's allegation that there was a conspiracy to transfer him to Farview may have been sufficient to establish imminent danger or injury to him at the time the complaint was filed. However, over fifteen months after the filing of the complaint, at the time defendants filed their motion for summary judgment, Mayberry had still not been transferred to Farview. (*See* Exhibit "C", Defendants' Motion for Summary Judgment). Now, some five years after the filing of the suit, there is nothing in the record to reflect that there has been such a transfer. Mayberry did argue, in his memorandum of law in support of his answer to defendants' motion to dismiss, that on June 5, 1973, sometime *before* this suit was filed, he was transferred to Farview where he was injected with the tranquilizer Prolixin. However, even if I were to assume that this prior transfer to Farview were for some reason illegal, "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief, . . . if unaccompanied by any continuing, present adverse effects." *O'Shea, supra,* 414 U.S. at 495–96, 94 S.Ct. at 676. In the suit now before me, Mayberry has not alleged facts sufficient to establish the existence of a genuine threat that he will be transferred illegally to Farview or that there is an ongoing conspiracy to harm him after transfer there.

Although I hold that Mayberry has not alleged a sufficient case or controversy to invoke the court's jurisdiction here, I note that he is not without recourse if a genuine dispute should arise. Mayberry in this suit seeks an injunction prohibiting the defendants from transferring him to Farview unless he is given notice, a psychiatric examination, a hearing, and the assistance of counsel. During the pendency of this action, Judge R. Dixon Herman of the United States District Court for the Middle District of Pennsylvania entered a declaratory judgment that in effect requires that state prisoners in Pennsylvania be accorded the rights that Mayberry seeks here before they are transferred to Farview State Hospital. *United States ex rel. Souder v. Watson,* 413 F.Supp. 711, 717 (M.D.Pa.1976). Thus, if at

7. Although defendants have termed this a standing argument, they have actually argued that no Article III controversy exists.

sometime in the future Mayberry should be confronted with imminent transfer to Farview or is transferred without being accorded his rights, he will be entitled to relief by filing suit at that time.

Finally, the defendants argue that Mayberry's claims based upon the alleged attempt to murder him while he was being transferred from Chester County Prison to the State Correctional Institution at Dallas are barred by the doctrine of collateral estoppel, because as noted above, Mayberry pleaded guilty to criminal charges in connection with the incident that occurred while he was being transferred. Defendants argue that Mayberry's guilty plea constituted an admission of the truth of the charges against him, and that the plea conclusively established that it was he who attacked the prison guards transporting him, with the result that he is estopped from contending, as he attempts to do in the instant suit, that it was the guards who attacked him.

The majority rule is that a "judgment of conviction, based on a plea. of guilty, is conclusive in a civil suit between the same parties on all of the issues that would have been determined by a conviction after a contested trial." 1B Moore's Federal Practice, ¶ 0.418, p. 2706 (1974). In this circuit, the leading case is *United States v. Accardo,* 113 F.Supp. 783 (D.N.J.1953), *affirmed,* 208 F.2d 632 (3d Cir. 1953), *cert. denied,* 347 U.S. 952, 74 S.Ct. 677, 98 L.Ed. 1098 (1954). In *Accardo,* the government sued to revoke the naturalization of an alien on the ground that he did not reveal in his petition for naturalization that he had pleaded guilty to conspiracy to operate an unregistered still. The issue before the court was whether he could at the revocation hearing deny his guilt on the charges to which he had earlier pleaded guilty, and the court held that the guilty plea constituted an estoppel of record on the issue of his guilt. The court's rationale was that to permit defendants subsequently to deny their guilt on charges to which they had pleaded guilty would result in endless, useless litigation. More recently, *Accardo* was cited by the court in *Hooper v. Guthrie,* 390 F.Supp. 1327 (W.D.Pa.

1975) as support for its holding that the plaintiff there was precluded by a guilty plea from subsequently contesting in a § 1983 suit an allegedly illegal search that unearthed evidence against him on the criminal charges to which he pleaded guilty.

Numerous other courts outside of this circuit have also invoked the principle of collateral estoppel in cases where a criminal defendant who pleaded guilty to the charges against him later brought a civil action raising an issue adjudicated by the guilty plea. *E. g., Nathan v. Tenna Corp.,* 560 F.2d 761 (7th Cir. 1977); *Mastracchio v. Ricci,* 498 F.2d 1257 (1st Cir. 1974); *Brazzell v. Adams,* 493 F.2d 489 (5th Cir. 1974); *Metros v. United States District Court for the District of Colorado,* 441 F.2d 313 (10th Cir. 1971).

Assuming then that as a general matter it is proper to apply principles of collateral estoppel to bar the claim of a civil litigant who has previously pleaded guilty to a criminal charge involving the same issues, the question is whether Mayberry is estopped on the record here from raising claims based upon the January 21, 1974 incident that led to his being charged with the offenses to which he pleaded guilty. In *Scooper-Dooper, Inc. v. Kraftco Corp.,* 494 F.2d 840, 844 (3d Cir. 1974), the court ruled that three requirements must be met before collateral estoppel may be invoked:

(a) the issue decided in the prior litigation must be identical with the issue presented in the action in question;

(b) the prior litigation must have resulted in a final judgment on the merits; and

(c) the party against whom the estoppel is asserted must have been a party, or in privity with a party, to the prior adjudication.

On the facts of the instant case, the latter two requirements are plainly met: Mayberry was a party to the prior litigation, and his conviction based upon his guilty plea constitutes a final judgment against him. Thus the only question to decide is whether the issues in this suit are "identical" to the ones presented in the underlying criminal case.

Mayberry in this suit alleges that defendant prison guards Somner and Shaefer, while driving him to the State Correctional Institution at Dallas, attempted to murder him with a .22 caliber revolver which Shaefer had concealed on his person in addition to his regulation service revolver. Mayberry contends that defendant Somner was shot when Mayberry attempted, in self-defense, to take the gun away from Shaefer, when it went off, striking Somner. However, as noted above, in the criminal proceedings that followed the incident, Mayberry pleaded guilty to attempted murder, aggravated assault, assault by a prisoner, possessing an instrument of crime, and attempted escape. (Proceedings before the Honorable D. T. Marrone, Court of Common Pleas, Chester County, Pennsylvania, April 17, 1975). The guilty pleas admitted the essential elements of each of the crimes, and accordingly establish that the events of January 21, 1974, did not occur as Mayberry now alleges they did. Mayberry pleaded guilty to attempted murder and aggravated assault. Had he shot defendant Somner while defending himself against an attack by the guards, as he now asserts, he would have been entitled to assert the doctrine of self-defense in exculpation. 18 Pa. C.S.A. § 505. The guilty plea is inconsistent with the contention he now raises that he acted in self-defense, and the plea establishes that the force Mayberry used was not legally justified. Similarly, Mayberry pleaded guilty to possession of an instrument of crime. An element of this offense was that it was Mayberry who had possession of the revolver before the incident in which Somner was shot. His plea of guilty to this charge necessarily establishes that it was Mayberry who was carrying the revolver with which Somner was shot, which contradicts the allegation Mayberry now makes that Shaefer brought the gun with him in order to murder Mayberry. In short, simply by examining the elements of the crimes to which Mayberry has pleaded guilty it becomes clear that his plea works an estoppel against him in this suit.

There is an even stronger basis for concluding that Mayberry is estopped in this action. At the time Mayberry entered the plea to the charges, Pennsylvania law required that the court accepting the plea satisfy itself that there was a sufficient factual basis for it. *Commonwealth v. Maddox,* 450 Pa. 406, 300 A.2d 503 (1973); *Commonwealth v. Jackson,* 450 Pa. 417, 299 A.2d 209 (1973). At the hearing at which Mayberry entered the plea, the prosecutor set forth the following as its factual basis:

> On the morning of January 21, 1974, the defendant was strip-searched at Chester County Farms Prison. At that time he absolutely had no weapon. He was taken to Philadelphia by two Graterford Guards, he spent the day in Philadelphia, I believe going into the Courtroom about eleven o'clock, left the Courthouse in Philadelphia between four-thirty and five o'clock and proceeded on their way out to Chester County Farms, that being the defendant and the two prison guards, Mr. William Schaefer and Harry Somner.

> On their way to Chester County Farms the guards became lost. As they approached the intersection of Routes 926 and 841 the defendant was able to pick his handcuffs with a bobby pin and to take from his person, where he had secreted a twenty-two caliber pistol, he produced the gun and shot one of the guards, the guard who was driving, Harry Somner, in the back of the head. He was then subdued by the other guard and placed back in handcuffs and the State Police arrived. And that, basically, are the facts in this incident.

> Transcript of Guilty Plea and Sentencing (Court of Common Pleas, Chester County, April 17, 1975, p. 22).

This exchange then took place:

> THE COURT: Mr. Mayberry, have you anything to add or say about the actual facts of this case?
> DEFENDANT: I have nothing to add, your Honor, nothing to say, no.
> Transcript p. 23.

The court also reviewed in detail the elements of each offense with which Mayberry was charged. It explicitly warned Mayber-

ry that "[b]y entering a plea to all these, of course, you are admitting it." (Transcript p. 12). Mayberry replied that he understood the elements of all the offenses to which he admitted guilt. (*Id.*) This extensive inquiry by the court into the factual basis for Mayberry's plea removes all possible doubt that the plea constituted an admission by him that he instigated the incident in which defendant Somner was injured. Accordingly, I conclude that Mayberry is collaterally estopped from raising claims alleging a deprivation of his civil rights on the basis of the events that transpired on January 21, 1974.

The defendants' motion to dismiss under Rule 12, treated in part as a motion for summary judgment, and the defendants' motion for summary judgment, will be granted.