UNITED STATES of America,
Plaintiff,

v.

BEN GRUNSTEIN & SONS CO.,
et al., Defendants.

Civ. No. 888-51.

United States District Court,
D. New Jersey.

Jan. 19, 1955.

See also 12 F.R.D. 184.

908

Raymond Del Tufo, Jr., U. S. Atty., Newark, N. J., William M. Lytle, E. Leo Backus, Washington, D. C., for plaintiff.

Kasen, Schnitzer & Kasen, Morris M. Schnitzer, Newark, N. J., Aranow, Brodsky, Einhorn & Dann, Robert R. Dann, New York City, for defendants.

HARTSHORNE, District Judge.

The question here is as to the effect in a civil suit by the United States under the False Claims Act, Revised Statutes Sections 3490, 5438, 31 U.S.C.A. §§ 231–233, of a plea of guilty to a Federal indictment by certain defendants in both proceedings. Save that the civil complaint, as now amended, covers not only a general over-all conspiracy, in accordance with the pre-trial order[1], but more than 400 other counts on alleged substantive offenses, the situation here, both in fact and in law, is much the same as that ably dealt with by Judge Meaney, of this district, in United States v. American Packing Corporation, D.C. N.J.1953, 113 F.Supp. 223.

More specifically, the Government's motion asks for the entry of interlocutory summary judgment on the issue of liability against defendants Ben Grunstein and Sons Company and William Grunstein, both of whom had previously pleaded guilty to Count 1 in Federal Criminal Indictment 65–51, the other defendants in said civil complaint, some of whom were also parties to said indictment, not having so pleaded or been found guilty.

The applicable principles of law may be briefly stated. They are based on the doctrine of collateral estoppel, i. e., that an issue once litigated and determined is decided for all time between the parties to the suit, and therefore cannot thereafter be re-litigated in a second proceeding between the same parties or their privies. State of Oklahoma v. State of Texas, 1921, 256 U.S. 70, 41 S.Ct. 420, 65 L.Ed. 831; Local 167 of International Brotherhood of Teamsters, Chauffeurs, Stablemen & Helpers v. U. S., 1934, 291 U.S. 293, 54 S.Ct. 396, 78 L.Ed. 804; Emich Motors Corp. v. General Motors Corp., 1950, 340 U.S. 558, 568, 71 S.Ct. 408, 95 L.Ed. 534. This principle applies when the first action is criminal and the second civil, provided the result in the criminal case was a conviction, *Local 167 of International Brotherhood of Teamsters, Chauffeurs, Stablemen & Helpers v. U. S., supra; Emich Motors Corp. v. General Motors Corp., supra,* though not when the criminal case resulted in an acquittal, due to the difference in the applicable rules as to the quantum of proof. Helvering v. Mitchell, 1938, 303 U.S. 391, 58 S.Ct. 630, 82 L.Ed. 917; U. S. v. Gramer, 9 Cir., 1951, 191 F.2d 741, 27 A.L.R.2d 1132. Nor is it material whether the judgment of conviction result from a trial, as in the *Local 167* and *Emich Motors* cases, or from a plea of guilty. U. S. v. Bower, D.C.E.D.Tenn.1951, 95 F.Supp. 19; United States v. American Packing Co., *supra;* U. S. v. Accardo, D.C.N.J.1953, 113 F.Supp. 783, affirmed 3 Cir., 1953, 208 F.2d 632; U. S. v. American Precision Products Co., D.C. N.J.1953, 115 F.Supp. 823; Blumen v. Haff, 9 Cir., 1935, 78 F.2d 833. Surely, if, after a criminal verdict against him, overruling his denial of guilt, one is not permitted to make further denial, he should not be permitted to do so, when, instead of denying guilt, he has previously formally admitted it. Indeed at times

---

1. Pre-trial Order * * * page 6
   " * * * the complaint without further stenographic work be considered now as amended so as to allege additionally a single over-all conspiracy on which damages and forfeitures under the act are asked. * * * "

a plea of guilty is given greater scope than is a judgment of conviction after trial, as where the parties are not the same in the two proceedings. 31 A.L.R. 261, 278 (1924); 18 A.L.R.2d 1287, 1290 (1951); 5 Wigmore, Evidence, Sections 1066, 1346, 1671a.

▮ In applying these principles we find the parties in question to the civil complaint here to be the same as in the criminal indictment. The remaining point is as to whether any of the "questions distinctly put in issue and directly determined in the criminal prosecution" are raised in the civil complaint between the same parties. *Emich Motors, supra,* 340 U.S. at page 568, 71 S.Ct. at page 413. This requires a comparison of Count 1 for conspiracy in the indictment, to which alone the defendants pleaded, with the complaint, together with a consideration of the scope of the issues determined in the criminal conspiracy conviction. For it is the scope of the prior conviction which creates the estoppel.

▮ It is well settled that a conviction based on a verdict settles all issues "essential to the verdict". *Emich Motors, supra* [340 U.S. 558, 71 S.Ct. 414]. But since in a criminal conspiracy case proof of the unlawful agreement between the parties, plus the commission of any overt act, not necessarily all those alleged, suffices to support a verdict of guilty, no conviction of a criminal conspiracy, whether on verdict or plea, suffices of itself, without further evidence, to prove that defendant either admitted, or was found guilty by the jury, of committing any particular overt act. Nor, if the conspiracy is alleged to have been effectuated, as in *Emich Motors,* by a number of means, each of which would have sufficed therefor, can it be determined on a plea of guilty to such count, which of such means were admitted by the defendant to have been adopted for that purpose. *Emich Motors,*

*supra.* All that such plea admits is "the existence of the conspiracy as charged * * * as well as participation therein by the defendants so pleading." *United States v. American Packing Co., supra* [113 F.Supp. 225]. But, of course, the conspiracy as charged means the admission of that particular conspiracy in its essential nature, else the pleading defendants could not later plead double jeopardy to another indictment of that same nature. With these principles in mind, we turn to a consideration of Count 1 of the indictment and of the civil complaint.

As to the first question, the identity of any essential issue, under the criminal count pleaded to, and under the civil complaint, we note that such complaint under the statute both counts on a conspiracy to defraud the United States by obtaining or aiding to obtain the payment of a knowingly false claim, and also complains in a host of other counts of the substantive making or presenting of claims by the defendants to the United States and obtaining payment thereof, knowing said claims to be false.

Turning to Count 1 of the Indictment, we find it charges the defendants with conspiring "to commit offenses against the United States, to wit, to violate Section 80, Title 18 U.S.C. (1946 ed.) and Section 1001, Title 18 U.S.C. * * *." Section 80, so far as material, prohibits the wilful presentation of a false claim to the United States or the wilful making of a false claim to defraud the United States. Section 1001 prohibits the knowing falsification of a document before any Government agency. The statutes upon which the indictment are based therefore generally cover the knowing making or presenting of a false claim to the United States in order to defraud it.[2] The same paragraph of the indictment then continues by alleging that these statutory violations were "to defraud the

2. Pages later, at the very end of the Indictment, it cites Section 88, Title 18 U. S.C. (1946 ed.) and Section 371, Title 18 U.S.C. These latter citations add but little to the character of the indictment, because they are general sections covering conspiracies to commit any offense against the United States and to defraud it in any manner.

United States by depriving it of its money and property, by corrupting and deceiving its officers and employees assigned to make inspections at the plant of the said company, by depriving it of the honest and efficient services of certain of its said officers and employees, and by circumventing, defeating and frustrating the safeguards and inspection processes established by the Department of the Army for its protection in the purchase of meat products." This paragraph of the indictment then continues "The form and substance of the conspiracy was as follows:" Then follow seven paragraphs in all but one of which it is alleged that "It was a part of the conspiracy that the defendant(s)" by various methods would make false claims upon the United States and "would claim and receive payment for the same from the United States." The solitary exception to the above is the single paragraph alleging defendants' corruption of certain Army inspectors, obviously for that same purpose.

The pleading defendants claim that this indictment charges simply a conspiracy to corrupt an Army inspector by bribing him. Clearly, however, such a construction would nullify the bulk of the allegations of the indictment. Further, by no stretch of the imagination could the corruption of an Army inspector be considered per se to be its own end and aim. Nor does the indictment, while specifically reciting statutes which prohibit the knowing presentation of false claims for payment by the United States, any where cite the statute prohibiting bribery, Section 201, Title 18 U.S.C. On the other hand, when these relatively brief allusions to the bribery of the inspector are read in conjunction with the bulk of the charges of the indictment, it is quite clear that such bribery is set forth as one of the means used by the defendants to effectuate the conspiracy, along with the many others there alleged. Or, perhance, it might be considered to allege one of the characteristics of the unlawful understanding itself, the indictment itself in every part clearly pointing, as its end and aim, to a conspiracy to claim and receive payment from the United States of knowingly false claims.

If, then, this bribery allegation is but the statement of one of the many "means * * * used in effectuating the conspiracy", the plea to the indictment does not constitute an admission of his bribery under the above authorities. Though defendants, from their above contention, evidently admit this bribery in fact. Or, if the bribery is read as alleging one of the essential characteristics of the indictment pleaded to, then, by the same token, the plea would have admitted it. But in any event, whether alleged as one of many means of effectuation, or as constituting an essential characteristic of the conspiracy, such allegation could in no wise militate against the definite admission by the plea that the conspiracy was participated in by the pleading defendants, and was one primarily to obtain the payment of a knowingly false claim by the United States.

These judicially admitted issues are, as seen above, the identic issues, basic to the over-all conspiracy alleged in the amended civil complaint under the pre-trial order. Such issues therefore cannot be re-litigated, but are conclusively and finally established against the defendants who pleaded to the indictment. Indeed, there is some question whether Count 1 of the indictment does not allege a conspiracy that was effectuated. Note the allegations in paragraphs 9, 10, 11, 12, 13, 14 and 15 of the indictment count pleaded to, that as "a part of the conspiracy" the defendants would commit a series of frauds culminating in knowingly false representations to the United States, as a result of which "the said defendants would claim and receive payment for the same from the United States." But since such allegation, being also alleged to be "the form and substance of the conspiracy" could also be read as simply characterizing the illegal plan which de-

fendants had in mind, as distinguished from the effectuation of such plan, this ambiguity must be construed in favor of the defendants sought to be estopped by their plea. *United States v. American Packing Corp., supra.* Thus defendants' pleas cannot be held to estop them from contesting the effectuation of the admitted conspiracy, some of which are alleged in counts 2 and 3 of the indictment not pleaded to, and as alleged in the 400-odd other counts of the complaint.

In addition, it will be recalled that the above statutes, upon which the civil complaint is based, authorize a suit against those conspiring to defraud the United States by obtaining, or aiding to obtain, the payment of a knowingly false claim, as causes of action entirely separate and distinct from a cause of action based upon either the presenting of a knowingly false claim or the using of false certificates to obtain the payment of a false claim. For every such conspiracy not only may double damages, with costs, be recovered, but, in addition, a $2,000 forfeiture.

Defendants argue that even though they have finally admitted this conspiracy, carrying this forfeiture in its wake, they are not now liable to plaintiff therefor, because they did not judicially admit that the conspiracy had been in fact effectuated by the claiming, presenting and obtaining the payment from the United States of knowingly false claims. And they cite authorities to the effect that at common law a civil conspiracy does not entail liability unless the plaintiff can show it has been damaged thereby. However, the conspiracy alleged in the present civil complaint is not a common law conspiracy, but one created by the will of the Congress, and our highest court has already held this statute to mean that damage need not accrue in fact to the United States before a forfeiture is recoverable. United States ex rel. Marcus v. Hess, 1942, 317 U.S. 537, 63 S.Ct. 379, 87 L. Ed. 443; U. S. v. Rohleder, 3 Cir., 1946, 157 F.2d 126.

Defendants further argue that the recovery of this forfeiture, in addition to their sentence on the above indictment, constitutes double punishment, which they claim to be the equivalent of unconstitutional double jeopardy. But this same argument was raised before the United States Supreme Court in *Marcus,* which called attention to the fact that the statute in question was not criminal, so that the constitutional double jeopardy clause did not apply, the forfeitures and double damages being similar to punitive damages, recoverable, regularly, in a civil action at common law. Thus Congress had the clear power to impose such forfeitures, regardless of any previous criminal sentence which defendants might have incurred.

An order may be presented accordingly.