**Clarence E. HOLT, Plaintiff,**

v.

**SOUTHERN RAILWAY COMPANY, Defendant.**

**Civ. A. No. 2340.**

United States District Court, E. D. Tennessee, Northeastern Division.

Sept. 8, 1969.

See also D.C., 320 F.Supp. 864.

John S. McLellan, D. Bruce Shine, and Thomas D. Dossett, Kingsport, Tenn., for plaintiff. ·

C. T. Herndon, III, Johnson City, Tenn., James I. Hardy, Washington, D. C., for defendant.

## MEMORANDUM OPINION AND ORDER

NEESE, District Judge.

This is basically a diversity action for damages arising under the laws of the United States for the breach of a contract of employment. 28 U.S.C. §§ 1331 (a), 1332(a) (1). The plaintiff and de- fendant-by-counterclaim Mr. Holt was at the pertinent times a yard clerk of the defendant. He was discharged from this employment, on the ground that his misconduct in the performance of those duties proximately caused a derailment of a train at Natural Tunnel, in Virginia, resulting in a loss to the defendant and plaintiff-by-counterclaim of $95,000. Mr. Holt seeks to recover damages he claims from the railway, and the railway seeks to recover the damages it claims by counterclaim from Mr. Holt. The plaintiff and defendant-by-counterclaim seeks a partial summary judgment against the defendant and plaintiff-by-counterclaim, Rule 56(a) and (c), Federal Rules of Civil Procedure by striking from the defense and counterclaim certain allegations which, the plaintiff and defendant-by-counterclaim claims, the defendant and plaintiff-by-counterclaim is now estopped judicially from asserting.

It is asserted by the defendant and plaintiff-by-counterclaim that Mr. Holt failed to properly perform his duties as a yard clerk at Bulls Gap Yard, Tennessee, on or about February 19, 1966, when at approximately 10:10 o'clock, p. m., he allegedly marked boxcar PRR 614770 of extra train no. 3604 west for delivery to Andover, Virginia, when the waybill therefor showed that this boxcar was to be delivered to the C. & O. Railroad at Frisco, Tennessee; that, as a result of such failure, said boxcar was not delivered in accordance with the waybill, but moved past that point, resulting in damage to the lading and equipment on February 20, 1966, because the overhead clearance at Natural Tunnel was insufficient to clear the movement of this train; that as a result of insufficient clearance, the load on that boxcar was shifted in such manner that it collided subsequently with the structure of a highway bridge; and, that the plaintiff failed to exercise a reasonable degree of care, skill and judgment in the performance and discharge of his duties and,

thus, was guilty of such misconduct as to cause the aforementioned financial loss to the railway.

These allegations run completely counter to, and serve to repudiate, earlier statements made by the defendant and plaintiff-by-counterclaim, answering under oath through its claims agent at Bristol, Virginia, written interrogatories served upon it in another litigation, i. e., Clyde V. Crum v. Southern Railway Company, civil action no. 68–18–A, in the United States District Court for the Western District of Virginia, Abingdon Division. Therein, it was stated for the defendant and plaintiff-by-counterclaim that it " * * * did not know * * * " the height and width (for railroad clearance purposes) of (a) the two (2) rock tunnels preceding the bridge which was destroyed (i. e., Natural Tunnel and the smaller tunnel preceding it, traveling north), and (b) the overhead highway bridge which was destroyed, or the clearances (height and width) for (a) and (b), as shown on those records, rules, etc., of defendant used for railroad dispatching purposes, if different from those figures for (a) and (b) above; that the defendant " * * * does not know * * * " the cause of the accident and is, therefore, unable to state whether any cargo became dislodged and a proximate cause of the accident; that, in the makeup of the train, the car number, type and location in the train of the cargo having the greatest height and width was " * * * unknown * * * ";

That it was " * * * not known * * * " whether the routing of said cargo was changed from point of origin to point of accident, and if so, by whom, when, where and why; that, from and including Knoxville, to point of accident, the names and locations of those agents and employees of the defendant responsible for checking the cars and cargoes of the subject train were " * * * unknown * * * "; that the name and address of defendant's employee or agent who was the last to check the train, its

cargoes and the routing thereof, prior to the accident, was " * * * unknown. Clerk Holt at Bulls Gap—but he did not check cargo. * * * "; that the defendant " * * * did not know * * * " the name and address of the defendant's employee or agent who initially routed the said cargo over the route leading through what is called the "Natural Tunnel", and the names and addresses of agents or employees of defendant who thereafter approved said routing, if the cargo of any one or more cars made contact with one of the tunnels preceding the bridge; that it was " * * * not known * * * " the dimensions, height, width, and length of the cargo or cargoes that " * * * made contact with any timbers on the bridge. The bridge might have fallen on the train for a multiplicity of reasons for which the defendant would not be liable * * * "; and except for J. H. King, the aforementioned claims agent, for whose alleged work product a privilege was claimed, the names, addresses and official capacities of any persons, not elsewhere set out, of those present or former agents, servants and/or employees of defendant, and other persons known by defendant to possess knowledge of facts or circumstances, or having custody of writings, drawings, or pictures, concerning or bearing upon the substance of their knowledge, and/or a description of the writings, drawings or pictures in their custody, were not revealed.

■ This Court has diversity jurisdiction herein. Thus, the laws of Tennessee are regarded as the rules of decision in this civil action. 28 U.S.C. § 1652. The plaintiff and defendant-by-counterclaim urges that its adversary is estopped judicially to make a defense and counterclaim on matters inconsistent with its prior sworn answers to interrogatories seeking to elicit the same information. Judicial estoppel is based solely on public policy which upholds the sanctity of an oath and precludes a party who has made a sworn statement, even

in another litigation, from repudiating the same when he thinks it is to his advantage to do so. It might well be termed "estoppel by oath". Sartain v. Dixie Coal & Iron Co. (1924), 150 Tenn. 633, 266 S.W. 313, 318 [7]. Unless the defendant can show that its previous statements under oath were made inadvertently or through mistakes (" * * * 'inconsiderately', as many of the cases say * * * "), it is absolutely barred by its former statements. *Idem.*; Phoenix Ins. Co. v. Jordan (1944), 28 Tenn. App. 11, 184 S.W.2d 721, 726, certiorari denied (1944), D. M. Rose & Co. v. Snyder (1947), 185 Tenn. 499, 206 S.W.2d 897, 906 [18]; see also United States v. Certain Land and Interests in Property, D.C.Tenn. (1964), 225 F.Supp. 338, 340–341 [2–4]. " * * * The rule rests not upon prejudice to the individual [corporation] but prejudice to the administration of justice and hence to society which would result if a litigant were allowed to obtain an advantage for himself, or attempt to do so, by willfully swearing one thing at a time, and obtain another advantage, or attempt to do so, by willfully swearing the opposite another time, with no explanation of the inconsistency and with the possibility of prevailing in both instances. To countenance such a situation would be to regard with complacency a violation of the sanctity of an oath, and bring our system into disrepute. * * * " Melton v. Anderson, (1948), 32 Tenn.App. 335, 222 S.W.2d 666, 669 [3].

The defendant and plaintiff-by-counterclaim makes no claim that its previous statements under oath were made inadvertently, through mistake, or inconsiderately. Rather, it is claimed that the answers to the earlier interrogatories were based on whatever personal knowledge the aforenamed claims agent, himself, had of the accident involved herein. It is claimed further that also on file at the time these interrogatories were answered in the other lawsuit by the defendant and plaintiff-by-counter-claim, were some ten pretrial depositions of various employees of the railway asserting the railway's position as to the cause of the derailment.

These explanatory claims do not constitute the inadvertency, mistake, or inconsideration required to excuse the departure of the defendant and plaintiff-by-counterclaim from its sworn statements of unknowingness of an earlier time. The railway is a private corporation. When it was served with interrogatories, it answered by an officer or agent who was required to furnish such information as was available to the corporation. Rule 33, Federal Rules of Civil Procedure. The corporation could not successfully avoid answering the interrogatories served upon it by its allegation of ignorance of the facts inquired into, because it could have obtained the information requested therein from sources under its control. Security Mut. Cas. Co. v. Rich, D.C.Pa. (1956), 20 F.R.D. 112; Greenbie v. Noble, D.C.N.Y. (1955), 18 F.R.D. 414. It might have qualified the answers to the interrogatories it served, to show the sources under its control, in order to avoid having admitted something which it did not admit. Hornung v. Eastern Auto. Forwarding Co., D.C.Ohio (1951), 11 F.R.D. 300.

The interrogatories were addressed to the corporate defendant and plaintiff-by-counterclaim. This corporation acted vicariously of necessity, and the knowledge of all its officers and agents was the knowledge of the corporation. Bergeson v. Life Insurance Corporation of America, C.A. 10th (1959), 265 F.2d 227, 228 232 [6], certiorari denied (1959), 360 U.S. 932, 79 S.Ct. 1452, 3 L.Ed.2d 1545. Notice of any fact acquired by one of its agents while transacting the business of the corporation was notice to the corporation. Schram v. Burt, C.A. 6th (1940), 111 F.2d 557, 564 [18]. In answering the interrogatories propounded to it in the earlier proceeding, it was incumbent

upon the railway to select an agent to answer them who could provide the information sought by the plaintiff therein. United States v. 3963 Bottles, More or Less, etc., C.A. 7th (1959), 265 F.2d 332, 336 [6], certiorari denied (1959), 360 U.S. 931, 79 S.Ct. 1448, 3 L.Ed.2d 1544.

The pleading, depositions, answers to interrogatories in another action, the supporting and opposing affidavits on file showing that the defendant and plaintiff-by-counterclaim is absolutely barred from repudiating its former sworn statements by the assertion herein of the aforementioned defense and counterclaim, as to these statements there is no genuine issue of material fact extant between these parties, and, accordingly, the plaintiff and defendant-by-counterclaim is entitled to a partial summary judgment thereupon as a matter of law. Rule 56(c), Federal Rules of Civil Procedure. Therefore, such motion hereby is granted. The Court orders stricken from the answer and counterclaim the aforementioned insufficient defense and redundant counterclaim. Rule 12(f), Federal Rules of Civil Procedure. For purposes of greater clarity, the defendant will replead within 20 days, in a manner consistent with the law of the case herein established.