Robert BOWER

v.

Terrence O'HARA, Doris Sparks and Sparks Caribbean Investment, Inc.

Appeal of Doris SPARKS,

Appeal of Terrence O'HARA.

Nos. 84–3400, 84–3402.

United States Court of Appeals, Third Circuit.

Argued Feb. 4, 1985.

Decided April 17, 1985.

Sloviter, Circuit Judge, filed a concurring and dissenting opinion.

Richard D. Keeling, Christiansted, St. Croix, U.S. Virgin Islands, Ann L. Hardy (Argued), Richmond, Va., for appellant Doris Sparks.

Robert L. King (Argued), New York City, for appellee.

Keith R. Brady (Argued), Wilmington, Del., for appellant Terrence O'Hara.

Before SEITZ, GIBBONS and SLOVI-TER, Circuit Judges.

## OPINION OF THE COURT

GIBBONS, Circuit Judge.

In these appeals the defendants Doris Sparks and Terrence O'Hara appeal from a $900,000 judgment in favor of Robert Bower for injuries Bower received at the hands of O'Hara. The affray which resulted in Bower's injuries took place on December 30, 1979 in Fat City, a tavern, owned by Sparks, in Charlotte Amalie, United States Virgin Islands. Both Bower and O'Hara were patrons. Summary judgment on the issue of liability was entered against O'Hara because he had pleaded guilty to a criminal charge which arose from the same incident providing the basis for Bower's civil action. The case against Sparks was tried to a jury on the theory that she or her employees were negligent in permitting a patron with O'Hara's dangerous propensities to have access to the premises. Sparks contends that she is entitled to a judgment notwithstanding the verdict, or that because of trial errors she is entitled to a new trial. O'Hara contends that the court erred in striking his defense of self-defense and entering a summary judgment on liability. Both contend that trial errors tainted the jury's damage determination. We reverse and remand for a new trial.

### I. BACKGROUND

#### A. *The Facts*

On December 29, 1979 Bower, accompanied by his friend Jeff Halpern, went to Fat City for a drink. While they were there a fight broke out between Halpern and O'Hara, in which a table was broken. The bartender, Al Wheatley, interceded, and "86d" both Halpern and O'Hara; that is, in the vernacular, he permanently barred both of them from Fat City. As both were leaving, O'Hara attacked Halpern from behind and bit him on the neck. Shortly after this incident Ms. Sparks, who had recently become the owner of Fat City, arrived and was informed by Wheatley of

what had transpired. Wheatley also informed her that one of the combatants, O'Hara, was the same person who, as he had reported to her several weeks earlier, had choked a patron until the victim began to turn blue. Wheatley told Sparks that, in his opinion, O'Hara was dangerous, and if not kept from the bar, would kill or injure someone some day. The established procedure at Fat City was to place the name of each patron who has been "86d" on a clipboard so as to call the exclusion to the attention of the next bartender. Sparks assumed Wheatley would follow this procedure, but inexplicably he did not. Thus Don Lawley, the bartender on duty the next evening, was unaware that O'Hara had been barred from the premises.

On December 30, 1979 Bower, with a man and a woman friend, returned to Fat City for a drink. O'Hara entered while Bower and his friends were there. What took place between them is a matter of dispute. Bower's version, supported by the testimony of his witnesses, is that after O'Hara was served a drink Bower turned to him and asked, "What was the beef between you and Jeff last night?" O'Hara thereupon stabbed him in the stomach. O'Hara's version, as testified to by Henrietta Malse, a waitress, is that Bower and his friends were drunk; that Bower angrily told his friends that he wanted to kill O'Hara; that Bower confronted O'Hara near the door; that O'Hara left Bower after the confrontation and entered the mens room; and that when he emerged, Bower confronted him again. There is no dispute that O'Hara had a knife, and that Bower was stabbed.

On August 12, 1980 Bower filed a civil action charging O'Hara with assault and battery and Sparks with negligence. Thereafter on October 24, 1980 the United States Attorney, on behalf of the Government of the Virgin Islands, filed an amended information charging O'Hara with assault with intent to commit murder in violation of V.I.Code Ann. tit. 14, § 295(1) (1964), carrying a knife during the commis-

sion of a crime of violence in violation of *id.* § 2251(a)(2)(B) (Supp.1984), and third-degree assault in violation of *id.* § 297(4) (Supp.1984).[1] Each of these charges carries a maximum sentence of five years. Facing a possible fifteen year jail term, O'Hara entered into a plea bargain in which the United States Attorney agreed to dismiss the section 295(1) and section 2251(a)(2)(B) charges if O'Hara would plead guilty to the section 297(4) charge. The terms of the plea bargain were placed on the record, and the court, pursuant to Fed. R.Crim.P. 11, caused the United States Attorney to place the factual basis for the plea on the record. The United States Attorney stated that his evidence would show that while Bower and O'Hara were talking at Fat City, O'Hara appeared to pat Bower on the stomach; witnesses saw the flash of a knife in O'Hara's hand, and Bower, suffering from stab wounds in the abdomen, lost consciousness. The court ruled, "that will be a sufficient basis for a plea of guilty to assault third." App. 26. The court then accepted the plea.

### B. *The Partial Summary Judgment*

O'Hara's answer to the civil action asserted that he acted in self-defense. Likewise, Sparks' theory of the case was that Bower was the aggressor. On October 29, 1981 Bower moved to strike O'Hara's self-defense claim from his answer and to enter partial summary judgment against him on the issue of liability. Bower argued in support of the motion that by virtue of O'Hara's guilty plea to a violation of section 297(4) which provides that "whoever ... assaults another and inflicts serious bodily injury upon the person assaulted ... shall be fined not more than $500 or imprisoned for not more than five years or both", he was collaterally estopped from asserting that he acted in self-defense.

Bower's motion was granted by the district court which relied on *United States v. Accardo,* 113 F.Supp. 783 (D.N.J.), *aff'd per curiam,* 208 F.2d 632 (3d Cir.1953), *cert. denied,* 347 U.S. 952, 74 S.Ct. 677, 98

---

**1.** The date and terms of the original informa- tion do not appear in the record before us.

L.Ed. 1098 (1954) and *Metros v. United States District Court*, 441 F.2d 313 (10th Cir.1970).

## C. *The Trial*

O'Hara's deposition was taken by Bower prior to trial, but since liability had been decided adversely to him by the partial summary judgment, O'Hara did not appear at trial. At the time of trial O'Hara was not within reach of a subpoena. Bower made a motion *in limine* to prevent Sparks from introducing either live or deposition testimony of O'Hara which contradicted his guilty plea. Such testimony would, according to Bower, result in a "mockery of justice." By then, Bower had the benefit of O'Hara's deposition and knew that O'Hara's testimony as to the events leading up to the affray would conflict with his own. The court did not rule on that motion prior to trial. App. 246. It did rule, however, that neither defendant could offer testimony about O'Hara's psychiatric condition. App. 247.

At trial, following the presentation of his case, Bower, aware that Sparks intended to introduce O'Hara's deposition, raised the matter with the court. This colloquy took place outside the presence of the jury:

MR. KING: [Bower's attorney] There is a problem with the O'Hara deposition, again.

THE COURT: What is the problem?

MR. KING: I had filed a motion in limine with respect to the problem with the admission, I would insist the collateral estoppel effect of the Court's ruling precludes any testimony from Mr. O'Hara that Mr. Bower was the aggressor.

THE COURT: That's true. You see, I tried to make one thing clear in that opinion I wrote. When Mr. Stout requested the collateral estoppel, Mr. O'Hara admitted before I would take his plea of guilty, and I made it clear to him, I will not accept your plea of guilty if you are coming in with this Vietnam syndrome. If you are coming in with self-defense, I will accept your plea of guilty if and only if you are admitting

you committed an unlawful assault on this man.

And I told Mr. Stout, take time, have a recess and talk with him. And when they came back, when they resumed the Rule 11 proceedings, it was on that basis.

So he is not going to be heard in this Court before me, unless higher authority says so, to talk about any excuse for this unlawful assault, which he admitted under oath.

MR. KEELING: [Sparks' attorney] May I submit, your Honor, I would be calling Mr. Terrence O'Hara—

THE COURT: You just told me he was Mr. Capdeville's witness.

MR. KEELING: I did say that, your Honor.

THE COURT: You are going to call him now?

MR. KEELING: I will call Mr. O'Hara, I would like to put him on. He is my witness to present the facts that occurred in my client's restaurant on December 30, 1979.

THE COURT: I don't want this to be a total fraud in this Court, a total fraud in this Court, and I am going to be very careful with what I let the lawyers do.

As a matter of fact, I am very much displeased with some of the courses being taken in this Court on Mr. O'Hara's behalf. Mr. O'Hara was supposed to be going to the penitentiary, but for representations made to me that he had made his peace with this government, and had come to some agreement with this gentleman on the front bench.

And I asked him if he had any objection to probation under those circumstances, and he said no. That is the only thing that saved Mr. O'Hara from the penitentiary.

I am not going to permit anyone before me, to come under oath, after having been warned, and give me one version of it, and then hide in New York, and send a deposition down here.

If he wants to testify for you, bring him. Because the moment he says contrary to this, he is going to jail for con-

tempt of Court and perjury. He would not be allowed to deny anything he admitted under oath to persuade me to accept that guilty plea.

I only say that you are not collaterally estopped, but you are not going to do it through the perjured testimony of Mr. O'Hara, either perjury then or now. It is a fraud on the Court, and I will not permit it.

App. 1000–03.

.    .    .    .    .

MR. KEELING: It has the same effect, whether it goes under the name collateral estoppel, or whatever.

THE COURT: No. You are not collaterally estopped to bring any witness to testify that Mr. Bower menaced Mr. O'Hara to the extent that Mr. O'Hara was legally justified or excused in stabbing him in self-defense. You can bring any witness you want to support that story.

You said in the opening statement that Mr. O'Hara—Mr. Bower threatened Mr. O'Hara, to kill him. If you have any witnesses to testify to that other than Mr. O'Hara, well and good. But Mr. O'Hara is not going to hide in New York and perpetrate this fraud on the Court. I'm sorry.

App. 1004.

.    .    .    .    .

THE COURT: I will not permit Mr. O'Hara's deposition, that much I will rule on now. I will stand on it.

MR. KEELING: No part of his deposition?

THE COURT: Any part of his deposition that contradicts the oath he took on the Rule 11 proceedings is barred.

App. 1006.

The court was obviously confused about what transpired in the Rule 11 proceedings, for the only factual representations were made by the United States Attorney. O'Hara was not under oath, and did no more than answer affirmatively when asked if he pleaded guilty.

The next day the court ruled that "[c]ontrary to what I said yesterday, if counsel for Defendant Sparks wishes to read the Terrence O'Hara deposition, he may read it." App. 1016. Sparks did offer the deposition at trial, but in a side-bar conference the court noted what it perceived to be O'Hara's refusal to answer the question, "How many fights or arguments did you get into from October 12, 1979 through December 31, 1979?" App. 1050. At that point the court ruled that "[i]f he did not answer the question, the rest of the deposition is out." App. 1051. Sparks' attorney pointed out that the question had in fact been answered later. The Court briefly scanned the deposition, and excluded it because O'Hara had refused to answer. App. 1054.

Examination of the transcript of O'Hara's deposition discloses that the court was mistaken. The question which O'Hara refused to answer is at App. 392. The questioning continued, however, as follows:

Q. [By Bower's attorney] Isn't it true that you had a number of fights in Fat City between October 12, 1979 and December 31, 1979?

A. I refer to my previous answer. The answer is no.

Q. Is that no, you will not answer, or no, you did not have those fights?

A. No. I did not become involved in a number of arguments.

.    .    .    .    .

Q. Did you get involved in more than one fight between October 12, 1979 and December 31, 1979?

A. No.

.    .    .    .    .

Q. Isn't it true, Mr. O'Hara, that you were involved in at least three fights in Fat City between December—between October 12, 1979 and December 31, 1979?

A. No.

Q. Mr. O'Hara, how many arguments were you involved in at Fat City between December—October 12, 1979 and December 31, 1979?

A. One that I can remember?

Q. What was the date of that argument?

A. I don't remember.

Q. Who was it with?

A. I don't even know his name.

Q. Was it the person you stabbed?

A. No, it wasn't. I believe we're addressing incidents other than the incident between myself and Mr. Bower in this line of questioning, which is a matter of court record in the criminal proceedings.

App. 392–94.

An examination of the entire deposition discloses that although O'Hara was on occasion somewhat uncooperative, and that some questions had to be repeated, in no instance was Bower's attorney unsuccessful in obtaining an answer to his questions.

Although, as noted above, the court referred to O'Hara's refusal to answer, the record is unclear as to whether this was the only ground for exclusion, given that the court also stated to the jury at the conclusion of the side-bar conference: "I'm sorry; because of material contained in this deposition, I will not hear the rest of it." App. 1056. Considered in light of the colloquy which took place the previous day, it is not unlikely that the court was dissatisfied with the fact that O'Hara, despite his guilty plea, was claiming to have acted in self defense to Bower's aggression.

Thus, the case went to the jury with no testimony, either live or by deposition, from a critical participant in the affray. The court also excluded any evidence with respect to O'Hara's psychological condition. Finally, the court *sua sponte* excluded testimony of Noel Loftus, one of Bower's former employers. The excluded testimony would have tended to show that Bower was an unreliable worker, and that evidence about his earnings record and capacity was exaggerated. The jury returned a verdict against both defendants. Post-trial motions for judgment notwithstanding the verdict or for a new trial were denied. These appeals followed.

II.

Sparks' Appeal

On appeal Sparks contends that she is entitled to a judgment notwithstanding the verdict because there was no evidence from which the jury could have concluded that Bower was not at fault. We find no merit in that contention.

Sparks' alternative contention, however, that she is entitled to a new trial, is meritorious. She raises a number of objections to the way the trial was conducted, one of which deals with the exclusion of O'Hara's deposition. That objection is plainly dispositive. Whether the deposition testimony was excluded based on the court's erroneous belief that O'Hara refused to answer questions posed by Bower's attorney, or because the court considered O'Hara's testimony to be inconsistent with his guilty plea, the exclusion was error. In the dispute between Bower and Sparks, O'Hara was a witness. He was a resident of New York, outside the reach of a subpoena. Sparks had a right to use his deposition at trial. Fed.R.Civ.P. 32(a)(3)(B), (D). Nor can the exclusion be deemed harmless error, for O'Hara's version of the events at Fat City on December 30 cast Bower in the role of the aggressor. If that testimony were credited by the jury, it might have raised serious doubts about whether Sparks' negligence was the proximate cause of Bower's injuries. Thus, the exclusion of O'Hara's deposition testimony requires a new trial.

The holding with respect to the deposition testimony is dispositive of Sparks' appeal. However, since she has raised other grounds for appeal, which present issues which will recur in a new trial, we address them.

We agree with Sparks that the proffered testimony of Noel Loftus suggesting that Bower was not a good worker was plainly relevant to the issue of damages, as it bore on his claim for loss of earning capacity. Moreover, since its exclusion appears from the colloquy (App. 1024–25) to have been prompted chiefly if not solely by

the court's impatience about the length of the trial, the ruling cannot be defended as discretionary under Fed.R.Evid. 403. The testimony should have been admitted.

Sparks also contends that the court abused its discretion in denying her request to bifurcate the trial on liability and damages. This ruling was, under the circumstances of the case, a permissible one.

Sparks urges that the court erred in preventing her from introducing evidence of O'Hara's psychiatric condition. The trial court did not err in ruling that this testimony was irrelevant to the negligence claim against Sparks. That claim was predicated upon her knowledge of O'Hara's dangerous propensities. The cause of those propensities was in no way relevant to her duty of care toward patrons in Fat City.

Nor do we agree that Sparks was prejudiced by the court's jury instructions with respect to the duty of care owed by a possessor of a tavern to a patron. The charge is consistent with Restatement (Second) of Torts §§ 314A(1)(a), 314A(2) and 315(b). Nor was it error, on this record, to refuse to charge that Bower assumed the risk of an assault by O'Hara.

Finally, Sparks contends that she was denied due process and equal protection, because the judgment makes her jointly and severally liable with O'Hara. A Virgin Islands statute provides for diminution of damages in proportion to the plaintiff's contributory negligence. V.I.Code Ann. tit. 5, § 1451(a) (Supp.1984). Section 1451(d) of that statute provides:

> Where recovery is allowed against more than one defendant, the trier of fact shall apportion, in dollars and cents, the amount awarded against each defendant. Liability of defendants to plaintiff shall be joint and several but, for contribution between defendants, each defendant shall be liable for that proportion of the verdict as the trier of fact has apportioned against such defendant.

*Id.* Since Sparks filed no cross-claim for contribution, we are at a loss to understand why her equal protection claim should be considered. Her claim for contribution from O'Hara has not been litigated at this point. Her contention that joint and several liability, as a matter of substantive due process, cannot survive the statutory adoption of comparative fault between plaintiffs and defendants, does not appear to have been urged in the district court. It is, in any event, without merit. The preservation, in section 1451(d), of joint and several liability in order to facilitate collection of judgments by victims of tortfeasors plainly has a rational basis. *Williamson v. Lee Optical, Inc.,* 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955).

Sparks' remaining contentions present issues which have been rendered moot by our holding that she is entitled to a new trial.

### III.

### O'Hara's Appeal

#### A. *Liability*

O'Hara contends that the court erred in granting summary judgment on liability. That judgment was entered on the theory that his guilty plea to third-degree assault collaterally estopped him from claiming that Bower was the aggressor, and that he acted in self-defense.

The starting point for our analysis of O'Hara's liability contention is V.I.Code Ann. tit. 1, § 4 (1967), which provides:

> The rules of the common law, as expressed in the restatements of the law approved by the American Law Institute, and to the extent not so expressed, as generally understood and applied in the United States, shall be the rules of decision in the courts of the Virgin Islands in cases to which they apply, in the absence of local laws to the contrary.

Thus we are directed to the text of the Restatements, and we may look beyond them only if no rule of decision is there expressed. The Restatement of Judgments § 93 (1942) expressed the rule of strict mutuality of judgments. Thus until June of 1980 Bower could not plausibly have

argued that he could rely on an estoppel resulting from an action to which he was not a party.[2] In that month the Restatement, Second, of Judgments was published by the American Law Institute, which, consistent with emerging caselaw, eliminated the mutuality requirement. We assume, arguendo, that the final promulgation of the Restatement Second of Judgments, which occurred after the affray at Fat City, but before the lawsuit was filed, resulted in the elimination of the mutuality requirement in the Virgin Islands.

As will be seen, the Restatement (Second) of Judgments did not, however, make any change in the law with respect to the other requirements for issue preclusion resulting from a judgment. Under the first Restatement of Judgments, we have held:

> [T]here are at least four requirements which must be met before collateral estoppel effect can be given to a prior action: (1) the issue sought to be precluded must be the same as that involved in the prior action; (2) *that issue must have been actually litigated;* (3) it must have been determined by a valid and final judgment; and (4) the determination must have been essential to the prior judgment. (footnote omitted) (emphasis supplied).

*Haize v. Hanover Ins. Co.*, 536 F.2d 576, 579 (3d Cir.1976). During the American Law Institute's long deliberations over the Restatement (Second) of Judgments, Professor Allan Vestal urged that the second requirement—actual litigation—be eliminated, in favor of a less restrictive "incentive and opportunity to litigate" standard. *See* Vestal. *The Restatement (Second) of Judgments: A Modest Dissent*, 66 Cornell L.Rev. 464 (1981); Vestal and Coughenour, *Preclusion/Res Judicata Variables: Criminal Prosecutions*, 19 Vand.L.Rev. 683 (1966); Vestal, *Preclusion/Res Judicata Variables: Nature of the Controversy*, 1965 Wash.U.L.Q. 158. In advancing the "incentive and opportunity" standard as a replacement for the "actually litigated" standard, Vestal relied upon several cases

in which courts had applied issue preclusion in suits between the government and another party, on the basis of that party's earlier guilty plea to the government charge; among them are *United States v. Accardo*, 113 F.Supp. 783, 786 (D.N.J.) *aff'd* 208 F.2d 632 (3d Cir.1953) *cert. denied*, 347 U.S. 952, 74 S.Ct. 677, 98 L.Ed. 1098 (1954) and *Metros v. United States District Court*, 441 F.2d 313, 317–19 (10th Cir.1970). *See* Vestal, *The Restatement (Second) of Judgments: A Modest Dissent, supra,* 482 n. 79. These, of course, are the very authorities relied upon by the trial court in support of the summary judgment on liability.

Professor Vestal's effort to have the American Law Institute adopt the position that a guilty plea resulted in issue preclusion on all issues which might have been litigated had the criminal charge been tried, was resisted by Professor David Shapiro in the course at the American Law Institute's deliberations. Professor Shapiro explains:

> My opposition to this argument was bathed in analytical purity and perfumed with policy. Issue preclusion, I urged at the meetings of the Advisory Committee and on the floor of the Institute, was a doctrine designed to prevent *relitigation* of an issue in a subsequent action on a different claim. Therefore the doctrine could not apply when an issue had never been subjected to an adversary contest leading to a judicial determination. Moreover, a rule favoring preclusion in these contexts might well foster unnecessary litigation of issues; a party who presumably had good reason to concede an issue or claim in the context of a particular lawsuit might be forced, notwithstanding that reason, to litigate that issue or claim because of potential preclusion in a subsequent action.

> The *Second Restatement* awarded my position the black letter and Allan's at least half a loaf in the commentary. Section 27, the general rule of issue preclusion, states that preclusion applies only

**2.** Cf. *Haize v. Hanover Ins. Co.*, 536 F.2d 576, 578, n. 1 (3d Cir.1976).

when an issue is *"actually* litigated and determined by a valid and final judgment." This rule is supported and explained in the first five paragraphs of comment e, which state that an issue is not actually litigated if it is admitted in a responsive pleading, or is the subject of a stipulation, or was raised in a case in which judgment was entered by confession, consent, or default. Yet the sixth and last paragraph of the comment contains a puzzling but significant hedge:

> It should be noted that, although issue preclusion does not apply to issues not actually litigated, there is a concept of estoppel in pais, not dealt with in this Restatement, which may be applicable in appropriate cases. Under this concept, a person who makes a representation may be estopped to deny its truth if the person to whom it was made has changed his position in reliance.

Roughly the same division of the spoils appears in a later section that addresses the effect of a criminal judgment in a subsequent civil prosecution. Such a judgment, the black letter tells us, is preclusive against the defendant in the criminal case in accordance with the rules of issue preclusion spelled out in earlier sections. Comment b of section 85 explains that because this reference includes the requirement of actual adjudication, "the rule of this Section does not apply where the criminal judgment was based on a plea of *nolo contendere* or a plea of guilty." But there follows a similar insistent and cryptic hedge:

> A defendant who pleads guilty may be held to be estopped in subsequent civil litigation from contesting facts representing the elements of the offense. However, under the terms of this Restatement such an estoppel is not a matter of issue preclusion, because the issue has not actually been litigated, but is a matter of the law of evidence beyond the scope of this Restatement.

And so the *Restatement,* while recognizing that the world may be more unruly than the black letter, manages to adhere to the concept that the laurel of issue preclusion is awarded to prevent relitigation of issues actually litigated; some other nosegay may be available to prevent litigation of an issue previously admitted, but that is not the *Restatement's* concern.

Shapiro, *Should a Guilty Plea Have Preclusive Effect?,* 70 Iowa L.Rev. 27, 28–29 (1984) (emphasis in original) (footnotes omitted). Professor Shapiro's description of the provisions of the Restatement (Second) of Judgments bearing on collateral estoppel is an accurate summary. Thus it is clear that the Restatement (Second) of Judgments made no change in the rule of the first Restatement, which provided for issue preclusion only with respect to issues actually litigated. The trial court, in granting summary judgment against O'Hara, relied on the very authorities which Professor Vestal unsuccessfully urged upon the American Law Institute in support of a departure from the "actually litigated" standard. The summary judgment against O'Hara cannot, therefore, be affirmed on the ground relied upon by the trial court.

■ Because the Restatement (Second) of Judgments leaves open the possibility that a guilty plea may result in some form of estoppel other than the collateral estoppel relied upon by the trial court, we have considered whether, on this record, there is another basis for affirming the summary judgment. We find none. Certainly there is no basis for promissory estoppel or estoppel in pais, if for no other reason than the absence of any evidence of Bower's detrimental reliance on O'Hara's guilty plea. *See* Restatement (Second) of Contracts § 90(1) (1979). We need not decide the issue of whether the government could establish a basis for some form of issue preclusion other than collateral estoppel in a case between it and a party who had pleaded guilty to its charge in a prior litigation.[3]

---

**3.** Professor Shapiro suggests a statutory solution     to the problem of the subsequent use of guilty

■ The summary judgment on liability against O'Hara must be reversed, and the case remanded for a new trial. That being so, it is appropriate to note that O'Hara's guilty plea will be admissible in evidence against him. Fed.R.Evid. 801(d)(2); *see Rain v. Pavkov*, 357 F.2d 506, 509 (3d Cir.1966); *Eschelbach v. William S. Scull Co., Inc.*, 293 F.2d 599, 603 (3d Cir.1961).

## B. *Damages*

O'Hara contends that several errors were committed by the district court during the portion of the trial dealing with damages. Since we are remanding for a new trial, we shall address those contentions.

■ During closing argument, Bower's attorney, without prior approval of the court or notice to opposing counsel, made use of a chart, not in evidence, which set forth damage computations. Use of visual aids not in evidence is a matter within the discretion of the trial court. *Smith v. Danyo*, 585 F.2d 83, 89 (3d Cir.1978). It is appropriate to caution, however, that those aids should be based upon materials in evidence. Thus they should not ordinarily be used until opposing counsel has examined them and been afforded an opportunity to call to the court's attention any inconsistencies between the contents of a visual aid and the evidence which has been admitted.

■ The jury was instructed to compute Bower's damages on the basis of his gross income with no deduction or addition with respect to taxes. This instruction appears to be inconsistent with *Varlack v. SWC Caribbean, Inc.*, 550 F.2d 171, 178 (3d Cir.1977), interpreting Restatement (Second) of Torts § 914A(2). The instruction to disregard taxes was correct as to future earnings, but incorrect as to past earnings.

■ Finally, O'Hara contends that the court erred in permitting Bower to intro-

duce certain labor contracts for carpet layers in New York in support of his damage calculations. There is evidence that Bower would have gone to New York to pursue his trade as a carpet layer, had he not been injured. The labor contracts thus were relevant to his anticipated earnings, even though O'Hara was not a union member. The argument that he would not have commanded the same wages as those of union members went only to the weight, not to the relevancy of the evidence.

## IV.

Both in No. 84–3400 and in No. 84–3402 the judgment appealed from will be reversed, and the case remanded for a new trial.

SLOVITER, Circuit Judge, concurring and dissenting.

I agree with the majority's disposition of Sparks' appeal and join in its opinion in that respect. I dissent, however, from the majority's disposition of O'Hara's appeal because I believe it takes too narrow a view of the effect of a guilty plea on subsequent civil litigation.

Preliminarily, if the restatements dispositively provided that a guilty plea could not be given preclusive effect in subsequent civil litigation, we would not be free to rule otherwise, no matter how persuasive we found the contrary reasoning. *See* V.I. Code Ann. tit. 1, § 4 (1967). However, section 27 of the Restatement (Second) of Judgments, upon which the majority relies, merely deals with one basis for preclusion, that existing when an issue is actually litigated. A different section of that Restatement is addressed to the effect to be given a criminal judgment in a subsequent civil action, and the comment to that section expressly leaves open the possibility that a defendant who pleads guilty may be estopped in subsequent civil litigation. It states, in part,

pleas, but adds that he would favor a rule that any such statutory effect must be included in the direct consequences announced to the defendant before the plea is received. 70 Iowa

L.Rev. at 51. No announcement of any collateral estoppel effects was made to O'Hara during the Rule 11 colloquy.

The rule of this Section presupposes that the issue in question was actually litigated in the criminal prosecution. See § 27, Comment e ... A *defendant who pleads guilty may be held to be estopped in subsequent civil litigation from contesting facts representing the elements of the offense.* However, under the terms of this Restatement such an estoppel is not a matter of issue preclusion, because the issue has not actually been litigated, but is a matter of the law of evidence beyond the scope of this Restatement.

Restatement (Second) of Judgments § 85 comment b (1982) (emphasis added). Clearly, then, the Restatement does not purport to exclude application of such a rule.

The theory for finding preclusion by a guilty plea may be a more flexible one than the principle of estoppel in pais, referred to in comment e to section 27, with its concomitant prerequisite of reliance. Significantly, the Introduction to the Restatement does not limit the basis for finding preclusion to estoppel in pais. It states:

> [A]n accused in a criminal case may plead guilty or make a confession or admission in court concerning the facts upon which the charge is based. The problem then can arise whether the matter so admitted may be disputed if it arises in a subsequent action. *Many cases hold that an allegation admitted under such circumstances may not be controverted in subsequent litigation.* In some decisions the admission is treated as conclusive; in others it is treated as tantamount to prima facie evidence or a rebuttable presumption of the truth of the proposition in question.... Here, too, the results may be justified, but they flow from the conduct of the party and not from a decision of the matter by a court. *The conditions under which such an estoppel may be imposed,* and whether the effect of the admission should be conclusive or merely evidential, *are beyond the scope of this Restatement.*

Restatement (Second) of Judgments Introduction at 4–5 (1982) (emphasis added). In fact, the Reporter's Note to the applicable section of the Restatement expressly distinguished between the doctrine of "issue preclusion," covered in the Restatement text, and "estoppel," which forms the basis of the developing common law. He stated,

> Preclusion has also been applied when the conviction was obtained by a guilty plea, e.g., *Plunkett v. Commissioner,* 465 F.2d 299 (7th Cir.1972), a result that may be correct but which, in the analysis of this Restatement, is properly explained as a matter of estoppel rather than issue preclusion.

*Id.* Reporter's Note on § 85 comment b. Indeed, as Professor Shapiro himself stated, "some other nosegay may be available to prevent litigation of an issue previously admitted, but that is not the *Restatement's* concern." Shapiro, *Should a Guilty Plea Have Preclusive Effect?,* 70 Iowa L.Rev. 27, 29 (1984).

In the absence of any dispositive provision in the Restatement, we are free to look to the common law as generally understood in the United States. *See American Home Assurance Co. v. Sunshine Supermarket, Inc.,* 753 F.2d 321, 327 (3d Cir. 1985); *Lockhart v. Holiday Homes of St. John, Inc.,* 678 F.2d 1176, 1180 n. 3 (3d Cir.1982). When, as in this case, the law as generally applied in the United States is in the process of evolution, I do not believe that we are foreclosed from selecting the rule that most of the modern decisions have adopted as more persuasive and rational.

Turning then to the recent cases, there seems to be almost no deviation from the general principle that when a defendant has pled guilty in a federal criminal action the defendant will be estopped in a subsequent civil suit by or against the United States government or its agencies from contesting issues encompassed by the prior guilty plea. *See Fontneau v. United States,* 654 F.2d 8, 10 (1st Cir.1981); *United States v. Podell,* 572 F.2d 31, 35 (2d Cir.1978); *Plunkett v. Commissioner,* 465 F.2d 299, 305–06 (7th Cir.1972); *United States v. Guzzone,* 273 F.2d 121, 123 (2d

Cir.1959); *United States v. Cripps*, 460 F.Supp. 969, 975 (E.D.Mich.1978); *United States v. Ben Grunstein & Sons Co.*, 127 F.Supp. 907, 909–10 (D.N.J.1955); *United States v. Accardo*, 113 F.Supp. 783, 786–87 (D.N.J.), *aff'd per curiam*, 208 F.2d 632 (3d Cir.1953), *cert. denied*, 347 U.S. 952, 74 S.Ct. 677, 98 L.Ed. 1098 (1954). That principle was expressly adopted by this court in *DeCavalcante v. Commissioner*, 620 F.2d 23, 26–27 n. 9 (3d Cir.1980).

Moreover, since mutuality of parties is no longer a prerequisite for estoppel, *see Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 327–28, 332–37, 99 S.Ct. 645, 649–50, 652–55, 58 L.Ed.2d 552 (1979); *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 349–50, 91 S.Ct. 1434, 1453–54, 28 L.Ed.2d 788 (1971); Restatement (Second) of Judgments §§ 29, 85(2), a defendant who pled guilty in an earlier criminal action has been estopped in subsequent civil actions against other parties from contesting the facts that were essential elements in the criminal action. *See, e.g., Raiford v. Abney (In re Raiford)*, 695 F.2d 521, 523–24 (11th Cir.1983); *Nathan v. Tenna Corp.*, 560 F.2d 761, 763–64 (7th Cir.1977); *Mayberry v. Somner*, 480 F.Supp. 833, 838 (E.D.Pa.1979).

Although many of the courts holding that a judgment based on a guilty plea is "conclusive of all issues that would have been resolved by a conviction following a contested trial," *In re Raiford*, 695 F.2d at 523, have done so under the theory of collateral estoppel, analytically they could have reached the same result applying the doctrine of judicial estoppel. Under that doctrine, "as a general proposition, a party to an action is estopped from assuming a position inconsistent with his assertion in a previous action, if his contention was successfully maintained". *Associated Hospital Service v. Pustilnik*, 497 Pa. 221, 227, 439 A.2d 1149, 1151 (1981). The doctrine of judicial estoppel has been recognized in various state courts, *see Mecham v. City of Glendale*, 15 Ariz.App. 402, 489 P.2d 65, 67 (1971); *Aetna Life Ins. Co. v. Wells*, 557 S.W.2d 144, 147 (Tex.Civ.App.1977), *writ of error refused*, 566 S.W.2d 900, 901 (Tex.

1978) (per curiam), and has been applied in federal courts as well. *See In re McCoy*, 373 F.Supp. 870, 875 (W.D.Tex.1974); *Holt v. Southern Ry. Co.*, 51 F.R.D. 296, 298–300 (E.D.Tenn.1969) (explaining and applying judicial estoppel theory).

In the Virgin Islands "the doctrine precluding the adoption of inconsistent positions in judicial proceedings" has also been accepted and applied to bar a party in one action from contesting his or her unequivocal contrary assertion in an earlier action. *Lindquist v. Quinones*, 79 F.R.D. 158, 162 (D.V.I.1978). A situation somewhat similar to that before us was presented in *Van Cura v. Delgado*, 18 V.I. 127 (V.I. Territorial Ct.1982), where plaintiff, who was injured in an automobile accident, sought to estop the defendant from denying his negligence because he had been convicted on a guilty plea of the charge of negligent driving. The territorial court had "no doubt" that estoppel (there termed "collateral estoppel") was available based on a guilty plea although it held it was inappropriate when there was no Rule 11 colloquy, and the plea was entered by counsel. *Id.* at 128–30.

There is now such pervasive acceptance of that principle in the almost routine holdings of the federal and state courts that we can confidently say that the common law as generally understood in the United States gives preclusive effect to a guilty plea, whatever the rubric used. *See* J. Moore, J. Lucas & T. Currier, 1B *Moore's Federal Practice* ¶ 0.418[1]. Thus, in *Nathan v. Tenna Corp.*, the court stated:

> In this Circuit, a criminal conviction based upon a guilty plea conclusively establishes for purposes of a subsequent civil proceeding that the defendant engaged in the criminal act for which he was convicted. *Plunkett v. Commissioner of Internal Revenue*, 465 F.2d 299, 305–07 (7th Cir.1972). Accordingly, Nathan's guilty plea to federal mail fraud charges for splitting commissions with Bryza conclusively establishes that his conduct was criminal, and Nathan

may not present evidence to the contrary in this civil proceeding. Hence, no material issue exists as to whether Nathan engaged in illegal conduct.

560 F.2d at 763–64.

State cases are to the same effect. In *Cumberland Pharmacy, Inc. v. Blum*, 69 A.D.2d 903, 415 N.Y.S.2d 898 (N.Y.App. Div.1979), the court stated, "A conviction founded on a plea establishes guilt as surely as one that results from a jury verdict [citing New York cases]. A conviction is conclusive proof of the underlying facts upon which it rests and the defendant is estopped from relitigating those facts in any future proceeding." 415 N.Y.S.2d at 900 (citations omitted). The Iowa Supreme Court, in a recent and particularly thoughtful opinion, reached the same result. After reviewing the controversy surrounding provisions in the Restatement (Second) of Judgments and the recent development of case law, that court reversed its earlier holdings and held that one who pleads guilty may be precluded in a subsequent civil action from relitigating issues necessarily determined by the criminal conviction. *Ideal Mutual Ins. Co. v. Winker*, 319 N.W.2d 289 (Iowa 1982).

From a policy viewpoint, it is anomalous to permit a criminal defendant to have the choice as to the preclusive effect of his or her conviction, which is what the majority's decision countenances. Indeed that may be one of the reasons why the Victim and Witness Protection Act of 1982 makes no distinction between a guilty plea and conviction after trial in imposing an obligation of restitution on the defendant. 18 U.S.C. §§ 3579–80 (1982). Significantly, the Act also "estop[s] the defendant from denying the essential allegations of that offense in any subsequent Federal civil proceeding or State civil proceeding, to the extent consistent with State law, brought by the victim." 18 U.S.C. § 3580(e).[1]

The rationale underlying the theory of judicial estoppel applies equally in this situation. As one court has stated, "[A de-

fendant] can hardly be heard now to say that he was unjustly convicted or that he was merely trifling with the course of justice when he pleaded guilty." *United States v. Bower*, 95 F.Supp. 19, 22 (E.D. Tenn.1951). I regret that this court has chosen to take the contrary position, which places us almost alone in the wake of the burgeoning law.

Since the majority relies heavily on the writings of Professor Shapiro, who was one of the first Reporters of the Restatement (Second) of Judgments, it is only fitting that I should counter with the contrary argument by another equally imposing academic figure, Professor Hazard, who served as Professor Shapiro's successor as Reporter. He wrote, on this issue:

> A good case can be made for saying that if a matter is distinctly put in issue and formally admitted, the party making the admission should be bound by it in subsequent litigation. This was the old formulation of the rule of "judicial estoppel," as it was then called: "The former verdict is conclusive only as to facts directly and distinctly put in issue...." But how can a matter be "directly and distinctly put in issue"? Obviously, by actual litigation. Another way is through pleadings. In a pleading system where matters are "distinctly put in issue," it makes sense to say that if a proposition is clearly asserted, and if a party is called upon solemnly to admit or deny the proposition, and if the stakes are high enough to assure that the party is serious in dealing with the issue, and if the party then admits or fails to deny the proposition, then he ought to be estopped from controverting it on some other occasion, particularly if that other occasion involves essentially the same transaction. The clearest case for such an estoppel is where a defendant pleads guilty to a substantial criminal charge and then seeks in civil litigation concerning the same transaction to assert that he did not commit the criminal act.

---

1. Of course, nothing prevents the Virgin Islands legislature from legislating to provide that guilty pleas shall have a preclusive effect in subsequent civil litigation.

G. Hazard, *Revisiting the Second Restatement of Judgments: Issue Preclusion and Related Problems,* 66 Cornell L.Rev. 564, 577–78 (1981) (footnotes omitted).

For the reasons aptly stated by Professor Hazard, I respectfully dissent.