JOURNAL ENTRY and OPINION
{¶ 1} Appellant Monica Wloszek appeals from summary judgment granted by the common pleas court in connection with her legal malpractice claim against Weston, Hurd, Fallon, Paisley, and Howell, L.L.P. On appeal, she assigns the following errors for our review.
 {¶ 2} "I. The trial court erred when it granted defendants-appellees' motion for summary judgment on plaintiffs-appellants' legal malpractice claims."
 {¶ 3} "II. Summary judgment on the theory of judicial estoppel, or any affirmative defense of estoppel, was inappropriate in this case."
 {¶ 4} "III. The trial court erred when it failed to disqualify Patrick McLaughlin from representing defendant-appellees."
 {¶ 5} Having reviewed the record and pertinent law, we affirm the judgment of the common pleas court. The apposite facts follow.
 {¶ 6} Monica Wloszek is a licensed chiropractor, and the principal shareholder in Monica M. Wloszek, Inc., d.b.a. Midwest Chiropractic and Physiotherapy Center, which provides chiropractic and physiotherapy services to patients. Wloszek has been a licensed chiropractor since 1992.
 {¶ 7} Greg Sears is the proprietor of Diagnostic Testing of Ohio, Inc. (DTO). DTO is a mobile-medical laboratory in the business of performing certain electro-diagnostic tests. DTO was both a Medicare and Medicaid provider authorized to submit claims to these programs for certain electro-diagnostic tests provided to patient-beneficiaries for both programs.
 {¶ 8} In a sworn affidavit to the court, Wloszek stated Greg Sears of DTO contacted her and inquired about a part-time sublease in Midwest's offices. The proposed terms for the sublease provided for the remuneration by DTO to Midwest in the amount of $75 per hour for the time DTO used Midwest's offices. She stated Sears assured her such arrangements were commonplace and legal among chiropractic practices. She stated she entered into the agreement and from 1994 until 1996, DTO utilized its space under the sublease only for the purpose of performing tests on patients which were referred to DTO by Midwest.
 {¶ 9} Wloszek stated in early 1996, she consulted and retained Todd Jackson of the law firm Weston, Hurd, Fallon, Paisley, Howley, L.L.P., for legal advice concerning the sublease agreement with DTO. Wloszek stated she explained the terms of her business arrangement with DTO to Todd Jackson, including the relationship between referral volume by her and the total rent paid by DTO under said arrangement. She stated at about the same time she was consulting Jackson, DTO furnished a new written lease agreement for execution by Midwest and DTO. Wloszek stated she furnished the lease agreement to Jackson who later reviewed it and advised her it was suitable for execution as long as the terms did not contradict the terms of the lease agreement with the property owner.
 {¶ 10} Wloszek further stated Jackson provided a master sublease agreement to use generally as a form agreement with other providers. Finally, Wloszek stated she executed the agreement between Midwest and DTO effective March 1, 1996, and between March 1996 and October 1997, Midwest referred approximately 70 patients to DTO, of whom approximately 15% were Medicare or Medicaid enrollees. Under the described agreements, Wloszek received approximately $7,119 from DTO in exchange for referring and ordering tests for Medicare and Medicaid patients.
 {¶ 11} In a sworn deposition, Todd Jackson stated when Wloszek contacted him by telephone in February 1996, she told him she had a business arrangement with Greg Sears of DTO, and the way they were conducting business was illegal and needed to be changed. Further Wloszek stated she understood the way to do it correctly was either to have a sublease agreement or an independent contractor agreement.[1]
 {¶ 12} Jackson stated Wloszek volunteered she had been fee splitting with Greg Sears of DTO, and under the arrangement she would bill for his services and then pay him 50% of collections.[2]
 {¶ 13} Jackson said Wloszek inquired whether an independent contractor or sublease agreement would satisfy the requirement of the law, and he told her he did not know and did not feel comfortable looking at it. Jackson stated Wloszek then inquired whether anyone else at the firm had any experience in these matters, and he told her he was new to the firm and did not know the areas of expertise of his associates.
 {¶ 14} At the end of the initial consultation in February 1996, Jackson stated Wloszek faxed over an agreement for him to review. Jackson stated the document Wloszek faxed did not include essential financial terms. Jackson said at the end of the initial conversation with Wloszek he thought his mission was not to look at the specific sublease for the purpose of advising her whether to sign the agreement, but to determine whether a sublease agreement in general could be legal.
 {¶ 15} Jackson stated on February 13, 1996, Wloszek contacted him again and inquired whether he had looked at the lease agreement, or had found anyone at the firm to look at it. He told her he had done nothing further on the matter, and she became irritated by this. Jackson said Wloszek stated she had been getting a lot of pressure from Sears and she felt it was important to make a decision, thus he decided to look at the sublease himself.
 {¶ 16} Jackson further stated Wloszek asked him to look at the sublease agreement and determine if it would be legal. He stated Wloszek told him not to "nitpick" it, and that she did not intend for him to get involved in any of the negotiations regarding the contract.[3] Jackson stated he reviewed the lease, and told Wloszek based on the terms in the sublease whereby DTO was paying rent for space it was using, it looked like a true lease agreement. He stated Wloszek then told him the accounting firm of Arthur Anderson was working with DTO to determine an appropriate rent, but he advised her to have her own accountant review it.[4] Jackson used the sublease Wloszek furnished as template, and constructed a master sublease. In his deposition, Jackson stated although he sent Wloszek the master sublease she never used it.[5]
 {¶ 17} In August 1998, the F.B.I. contacted Wloszek and told her Greg Sears and DTO were subject of an investigation. Attorney Jackson referred Wloszek to attorney Gary Johnson of Weston Hurd to assist in providing documents and other information to the federal investigators. Wloszek stated she cooperated with the investigation, but in late 1999, Jackson and Johnson informed her she would likely be criminally indicted for her involvement with DTO. Johnson advised Wloszek to seek the advice of a defense lawyer who was more conversant with federal criminal investigations. Thereafter, Wloszek retained attorney John Pyle.
 {¶ 18} An Information was filed against Wloszek in the case captioned United States of America v. Monica M. Wloszek, D.C.,
Case No. 1:00CR300, United States District Court, Northern District of Ohio. The information contained two (2) counts: conspiracy to violate the federal anti-kickback statute, and soliciting and receiving Medicare and Medicaid kickbacks.
 {¶ 19} On July 17, 2000, Wloszek appeared in the United States District Court for the Northern District of Ohio for arraignment and plea proceedings. Wloszek pled guilty to both counts of the indictment and was sentenced to a term of two years probation. As a result of the guilty plea she also agreed to pay restitution to Medicare and Medicaid in the amount of $7,119 which represented the amount she received from DTO, and agreed to pay the $43,729 to various governmental and private insurers that the U.S. Government identified. Further, she was excluded from participation in any federal and state health-care benefit programs; excluded from participation in the Ohio Bureau of Workers' Compensation Health Partnership Program, the Medical Mutual of Ohio Provider Network and the Aetna U.S. Healthcare Provider Network. Additionally, Wloszek entered into a consent agreement before the Ohio State Chiropractic Board to certain disciplinary action, specifically that her license to practice chiropractic medicine in the State of Ohio would be suspended for a term of twenty-four months, three months of actual suspension with twenty-one months of the suspension was stayed-in return for her compliance with the agreement.
 {¶ 20} Following her conviction, Wloszek filed suit against Weston Hurd alleging her conviction was a result of legal malpractice or breach of fiduciary trust. Weston Hurd filed motions to dismiss. The trial court issued an order converting the motion to dismiss into a motion for summary judgment and held the motion in abeyance to permit discovery.
 {¶ 21} On February 21, 2002, the trial court entertained oral arguments on the motion for summary judgment. On January 9, 2003, the trial court issued an order granting the motion for summary judgment. Wloszek now appeals.
 {¶ 22} We address Wloszek's second assigned error first in which she contends it was inappropriate for the trial court to grant summary judgment on the theory of judicial estoppel or any affirmative defense of estoppel.
 {¶ 23} We consider an appeal from summary judgment under a de novo standard of review.[6] Accordingly, we afford no deference to the trial court's decision and independently review the record to determine whether summary judgment is appropriate.[7] Under Civ.R. 56, summary judgment is appropriate when: (1) no genuine issue as to any material fact exists, (2) the party moving for summary judgment is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the non-moving party, reasonable minds can only reach one conclusion which is adverse to the non-moving party.[8]
 {¶ 24} The moving party carries an initial burden of setting forth specific facts which demonstrate his or her entitlement to summary judgment.[9] The movant may satisfy this burden with or without supporting affidavits, and must "point to evidentiary materials of the type listed in Civ.R. 56(E)."[10] If the movant fails to meet this burden, summary judgment is not appropriate; if the movant does meet this burden, summary judgment will only be appropriate if the non-movant fails to establish the existence of a genuine issue of material fact.[11] In satisfying its burden, the non-movant "may not rest upon the mere allegations or denials of his pleadings, but his response by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial."[12]
 {¶ 25} Rather than accepting either party's allegations as true, or interpreting divergent factual representations as genuine issues of material fact, we review the entire record and determine whether each party met their respective summary judgment burdens.
 {¶ 26} Summary judgment is a procedural device to terminate litigation and to avoid a formal trial where there is nothing to try. It must be awarded with caution, resolving doubts and construing evidence against the moving party, and granted only when it appears from the evidentiary material that reasonable minds can reach only an adverse conclusion as to the party opposing the motion.[13] A successful motion for summary judgment rests on the two-part foundation that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.[14]
 {¶ 27} The doctrine of judicial estoppel forbids a party from taking a position inconsistent with one successfully and unequivocally asserted by the same party in a prior proceeding.[15] The rationale of judicial estoppel is that "a party should not be allowed to convince one judicial body to adopt certain factual contentions and then subsequently unconscionably assert [to] another judicial body that these contentions were inaccurate and that a different set of facts should be found."[16] The policy behind judicial estoppel is to "`preserve the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship, achieving success on one position, then arguing the opposing to suit an exigency of the moment.'"[17] The doctrine applies only if three factors are met. The party asserting judicial estoppel must prove that its adversary "(1) took a contrary position; (2) under oath in a prior proceeding; and (3) the prior position was accepted by the court."[18]
 {¶ 28} The history of the case reveals Wloszek took a contrary position under oath in a prior proceeding which was accepted by the court. Wloszek pled guilty to conspiracy to violate the federal anti-kickback statute, and to soliciting and receiving Medicare and Medicaid kickbacks. She admitted under oath she knowingly, willfully, and intentionally solicited and received remuneration, despite knowing it was unlawful.
 {¶ 29} At the plea proceeding in federal court the following exchange took place:
 {¶ 30} The Court: Now I am required to find that there is a factual basis for your pleas of guilty. And that's been set forth in elaborate detail beginning at Paragraph 15, Page 5. And it goes through Paragraph 25, which ends at the top of Page 8. So it's over three pages of explanation of the factual basis. Have you read that carefully?
 {¶ 31} Ms. Wloszek: Yes.
 {¶ 32} The Court: Do you dispute anything that's set forth in the factual basis for the plea?
 {¶ 33} Ms. Wloszek: No.
 {¶ 34} The Court: Very well. The Court finds there is a factual basis for the plea.[19]
 {¶ 35} Wloszek failed to dispute anything in the factual basis for her pleas of guilt to the charged crimes. Most importantly, she never asserted innocent reliance on the advice of counsel as a basis for her conduct. Had Wloszek asserted innocent reliance on the advice of counsel, she would still have had to overcome the fact she consulted Jackson two years after she entered into the arrangement with DTO.
 {¶ 36} Having asserted under oath, in a prior proceeding, she knowingly engaged in criminal conduct, which position was adopted by the court, Wloszek is now estopped in the subsequent proceeding from propounding she lacked knowledge her business arrangement violated the law.
 {¶ 37} In Oklahoma v. Texas,[20] the Supreme Court delineated the doctrine of collateral estoppel as follows:
 {¶ 38} "The general principle, applied in numerous decisions of this court * * * is, that a question of fact or of law distinctly put in issue and directly determined by a court of competent jurisdiction as a ground of recovery or defense in a suit or action between parties sui juris is conclusively settled by the final judgment or decree therein so that it cannot be further litigated in a subsequent suit between the same parties or their privies whether the second suit be for the same or a different cause of action."
 {¶ 39} Wloszek's plea of guilty to the indictment in the district court estops her under the doctrine from relitigating the issues actually determined in that proceeding.[21]
Relitigation in a civil action of an issue determined adversely to the defendant in a prior criminal proceeding is foreclosed, whether the prior determination was based on the verdict of a jury,[22] or on a plea of guilty.[23] Indeed, where the prior conviction resulted from a plea of guilty there would appear to be greater warrant for application of the doctrine since the defendant has admitted the truth of the charges contained in the indictment.
 {¶ 40} A criminal conviction is conclusive proof and operates as an estoppel on defendants as to the facts supporting the conviction in a subsequent civil action.[24] To apply the principle of estoppel, however, the trial court in the subsequent civil proceeding must examine the record to determine exactly what was decided in the criminal proceeding.[25] Estoppel extends only to questions "directly put in issue and directly determined" in the criminal prosecution.[26] The difficult problem, as recognized by the Emich Court, is discerning what matters were adjudicated in the antecedent suit. In aid of its determination, the trial court must look to the record, the pleadings, the evidence submitted, the jury instructions, and any opinions of the courts.[27]
 {¶ 41} In the instant case, determining the scope of Wloszek's prior criminal conviction is not a difficult task. The information, the transcript of the arraignment and plea proceeding, and her guilty plea, makes clear she is estopped from now denying her liability.
 {¶ 42} We conclude the trial court appropriately applied the theory of judicial and collateral estoppel to foreclose Wloszek in the civil action from asserting innocent reliance on advice of counsel. Summary judgment in favor of Weston Hurd was thus proper. Accordingly, Wloszek's second assigned error is overruled.
 {¶ 43} Because we found in the second assigned error summary judgment was properly entered in favor of Weston Hurd, the remaining assigned errors are moot and need not be addressed.[28]
 {¶ 44} The judgment is affirmed.
Judgment affirmed.
ANNE L. KILBANE and TIMOTHY E. McMONAGLE, JJ., concur.
It is ordered that appellee recover of appellants its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution.
[1] Jackson's Depo. at 9-10.
[2] Jackson's Depo. at 10.
[3] Jackson's Dep. at 13.
[4] Jackson's Dep. at 18-19.
[5] Jackson's Depo. at 84.
[6] Baiko v. Mays (2000), 140 Ohio App.3d 1, citing Smiddyv. The Wedding Party, Inc. (1987), 30 Ohio St.3d 35; NortheastOhio Apt. Assn. v. Cuyahoga Cty. Bd. of Commrs. (1997),121 Ohio App.3d 188.
[7] Id. at 192, citing Brown v. Scioto Cty. Bd. of Commrs.
(1993), 87 Ohio App.3d 704.
[8] Temple v. Wean United, Inc. (1997), 50 Ohio St.2d 317,327.
[9] Dresher v. Burt, 75 Ohio St.3d 280, 292-293,1996-Ohio-107.
[10] Id. at 292.
[11] Id. at 293.
[12] Civ.R. 56(E); See Dresher.
[13] Petroff v. Commercial Motor Freight, Inc. (1960), 82 Ohio Law Abs. 433; Horvath v. Fisher Foods, Inc. (1963), 93 Ohio Law Abs. 182; Norman v. Thomas; Emery's Sons, Inc. (1966),7 Ohio App.2d 41; Morris v. First Natl. Bank Trust Co.
(1970), 21 Ohio St.2d 25.
[14] Kwait v. John David Management Co. (1974),42 Ohio App.2d 63. Vetovitz Bros., Inc., v. Kenny Constr. Co. (1978),60 Ohio App.2d 331, 332.
[15] Smith v. Dillard Dept. Stores, Inc. (2000),139 Ohio App.3d 525, 533, quoting Teledyne Indus., Inc. v. Natl. LaborRelations Bd. (C.A. 6, 1990), 911 F.2d 1214, 1217.
[16] Scioto Mem. Hosp. Assn., Inc. v. Price Waterhouse Co.
(Dec. 21, 1993), Franklin App. No. 90AP-1124.
[17] Smith at 533, quoting Teledyne at 1218.
[18] Id.
[19] Transcript of Arraignment and Plea Proceedings P. 17-18.
[20] (1921), 256 U.S. 70, 85, 41 S.Ct. 420, 422,65 L.Ed. 831.
[21] Cromwell v. County of Sac, (1876), 94 U.S. 351,24 L.Ed. 195; United States v. International Building Co., (1953),345 U.S. 502, 73 S.Ct. 807, 97 L.Ed. 1182; United States v. BenGrunstein Sons Co., (D.C.D.N.J. 1955), 127 F. Supp. 907.
[22] Emich Motors Corp. v. Gen. Motors Corp., (1951),340 U.S. 558, 71 S.Ct. 408, 95 L.Ed. 534; Local 167, etc. v. UnitedStates (1934), 291 U.S. 293, 54 S.Ct. 396, 78 L.Ed. 804.
[23] United States v. Bower (D.C.E.D. Tenn. 1951), 95 F. Supp. 19; United States v. Accardo, (D.C.D.N.J. 1953), 113 F. Supp. 784, affirmed, 3 Cir., 1953, 208 F.2d 632, certiorari denied, 1954, 347 U.S. 952, 74 S.Ct. 677, 98 L.Ed. 1098; United Statesv. American Precision Products Corp. (D.C.D.N.J. 1953),115 F. Supp. 823; United States v. Ben Grunstein, supra.
[24] Local 167 of Internatl. Brotherhood of Teamsters,Chauffeurs, Stablemen Helpers of America v. United States,
(1934), 291 U.S. 293, 298-99, 78 L.Ed. 804, 54 S.Ct. 396;Brown v. United States, (1975), 207 Ct. Cl. 768, 524 F.2d 693,705.
[25] Emich Motors Corp. v. Gen. Motors, (1951), 340 U.S. 558,569, 95 L.Ed. 534, 71 S.Ct. 408.
[26] Id. at 569; Brown at 705.
[27] Emich Motors at 569.
[28] App.R.12(A)(1)(c).