In re Stephen/Bernadette
HUMPHREY,
Debtor

Cincinnati Ins. Co., et al, Plaintiff,

v.

Stephen Humphrey, Defendant.

No. 06–3054.

United States Bankruptcy Court,
N.D. Ohio.

Nov. 30, 2006.

Cincinnati Insurance Company, Cincinnati.

James Joseph Popil, Toledo.

Andrew Schuman, Cincinnati Insurance Company, Toledo.

Heer Excavating, Inc., Archbold.

Stephen Henry Humphrey, Defiance.

Joseph W Westmeyer, III, Westmeyer Law Office, Toledo.

Joseph W. Westmeyer, Jr., Toledo.

## MEMORANDUM OPINION AND DECISION

RICHARD L. SPEER, Bankruptcy Judge.

This cause comes before the Court upon Plaintiffs' Motion for Summary Judgment, and the Defendant's Memorandum in Opposition. After reviewing the arguments presented by both parties in support of and in opposition to the motion, the Court finds, for the following reasons, that Plaintiffs' Motion for Summary Judgment should be Granted.

### FACTS

The Defendant, Stephen H. Humphrey, is a debtor in bankruptcy, having voluntarily sought the protections of this Court through the filing of a petition under Chapter 7 of the United States Bankruptcy Code in 2005. The Defendant's debts at issue in this proceeding arose from an Ohio state court criminal conviction for Grand Theft, entered on Defendant's guilty plea in the Court of Common Pleas of Williams County (hereinafter, "the state court"). The state court accepted Defendant's guilty plea after a hearing to determine whether the Defendant understood the nature of the charges. Thereafter, the state court awarded $5,000.00 in restitution in favor of the co-Plaintiff, Heer Excavating, Inc. (hereinafter, "Heer").

The other Plaintiff to this action, Cincinnati Insurance Company (hereinafter, "Cincinnati Insurance"), had a contract of indemnity with Heer, and paid it $29,969.10 on an insurance claim for damages caused by the Defendant to Heer's property. The Plaintiffs' complaint to determine dischargeability pertains to both the state court restitution order and any debt owed by Defendant for Cincinnati Insurance's indemnification of Heer.

The facts giving rise to the Defendant's state court criminal conviction involve several thefts that occurred from the Spring of 2003 to the Fall of 2004. During that time, Defendant engaged in the misappropriation of several large pieces of heavy machinery, which later led to criminal charges for Theft, Grand Theft, Vandalism and Receiving Stolen Property. Among the items the Defendant was charged with stealing: a tanker fuel truck, a large utility trailer, a Bobcat tractor, a backhoe (on another trailer), a third utility trailer, 200 pieces of lumber, and finally, a backhoe owned by Heer.

The Defendant later entered a plea of guilty to seven felony counts in the state court, including the count of Grand Theft at issue in this adversarial proceeding. In the state court proceeding, where Defendant's guilty plea was accepted, Defendant, appearing with his counsel, was described the charges against him and informed that restitution could be ordered on those counts. (Doc. No. 17, Ex. A, pgs.2–3). The state court also noted: "After addressing the defendant personally and inquiring of the defendant, the Court finds that the defendant understands the nature of the charge(s) and the maximum penalty(ies) involved." *Id.* at pg. 3

Ten months after completing his prison sentence, Defendant attempted to withdraw his guilty plea. But the state court denied Defendant's motion due to "significant delay between the plea of guilty and the motion to withdraw the plea." *State v. Humphrey*, 2006 WL 832916 at *4. Under Ohio law, a guilty plea can normally only be withdrawn prior to the imposition of a sentence, except to correct a "manifest injustice." Ohio Crim. R. 32.1.

The Defendant appealed, but the appellate court affirmed. In doing so, the court passed directly on the issue of Defendant's competence at the time of the guilty plea, stating: "if we were to find that ten months does not constitute 'undue delay,' the transcript of the hearing at which appellant entered his pleas demonstrates that he knowingly and voluntarily did so." *State v. Humphrey*, 2006 WL 832916 at *12–26. Nothing before this Court would indicate that this decision was appealed further.

### DISCUSSION

The Plaintiffs in this action seek a determination regarding the dischargeability of two separate debts: (1) the restitution order; and (2) any liability on the part of the Defendant which would arise in favor of Cincinnati Insurance for its indemnification of Heer.[1] Each of these claims will be addressed in order. Under 28 U.S.C. § 157(b)(2)(I), actions to determine the dischargeability of debt are core proceedings over which the bankruptcy courts have jurisdiction to enter final orders and judgments.

On the issue as to the dischargeability of the restitution order, the Plaintiffs cite to § 523(a)(7):

---

1. This Court has no evidence substantiating Defendant's liability to Cincinnati Insurance, and as such, this Court's discussion is limited to the issue of dischargeability, not the existence of the claim, nor what the amount of any such claim would be.

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

> (7) to the extent such debt is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss, other than a tax penalty—
>
> > (A) relating to a tax of a kind not specified in paragraph (1) of this subsection; or
> >
> > (B) imposed with respect to a transaction or event that occurred before three years before the date of the filing of the petition[.]

When involving an order of restitution, the applicability of this provision was initially uncertain. Of import, restitution was not one of the three classes of debts listed in the statute—i.e., fine, penalty, and forfeiture. Also, it was held that an order of restitution appeared more akin to a debt payable to the crime victim, as opposed to the statutory requirement that the obligation be "payable to and for the benefit of a governmental unit." *See In re Robinson*, 776 F.2d 30 (2nd Cir.1985), *rev'd* 479 U.S. 36, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986).

In *Kelly v. Robinson*, however, the Supreme Court discounted these points, holding that restitution orders could constitute debts "payable to and for the benefit of a governmental unit" despite resembling a judgment for the benefit of the victim. 479 U.S. 36, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986). In doing so, the Court reasoned:

> In our view, neither of the qualifying clauses of § 523(a)(7) allows the discharge of a criminal judgment that takes the form of restitution. The criminal justice system is not operated primarily for the benefit of victims, but for the benefit of society as a whole. Thus, it is concerned not only with punishing the offender, but also with rehabilitating him. Although restitution does resemble a judgment "for the benefit of" the victim, the context in which it is imposed undermines that conclusion. The victim has no control over the amount of restitution awarded or over the decision to award restitution. Moreover, the decision to impose restitution generally does not turn on the victim's injury, but on the penal goals of the State and the situation of the defendant..... Unlike an obligation which arises out of a contractual, statutory or common law duty, here the obligation is rooted in the traditional responsibility of a state to protect its citizens by enforcing its criminal statutes and to rehabilitate an offender by imposing a criminal sanction intended for that purpose.

*Id.* at 52 (internal citation and quotation omitted).

Also noteworthy in *Kelly* is what the Supreme Court did not say; with respect to orders for restitution, it did not seek to limit its construct of § 523(a)(7). Rather it stated:

> Because criminal proceedings focus on the State's interests in rehabilitation and punishment, rather than the victim's desire for compensation, we conclude that restitution orders imposed in such proceedings operate 'for the benefit of' the State. Similarly, they are not assessed 'for ... compensation' of the victim. The sentence following a criminal conviction necessarily considers the penal and rehabilitative interests of the State. Those interests are sufficient to place restitution orders within the meaning of § 523(a)(7).

*Id.* at 53, 107 S.Ct. 353. In his arguments to the Court, the Defendant did not address this decision; nor did the Defendant give any reason why his circumstances

should be distinguished from the Court's holding in *Kelly*. Considering, therefore, the Supreme Court's broad construction of § 523(a)(7),[2] there is no legal basis to exclude in this matter the state court restitution order from the scope of § 523(a)(7). *See Troff v. Utah*, 329 B.R. 85, 90–91 (D.Utah 2005) (observing that the Supreme Court's decision in Kelly has been given a broad construction).

■ Turning now to the claim held by Cincinnati Insurance, the Plaintiffs rely on § 523(a)(4) for its nondischargeability; this section provides:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny[.]

On this exception to discharge, the Plaintiffs point to and rely on the last ground set forth in the statute: larceny. For bankruptcy purposes, larceny is defined by federal law, not state law. *In re Storms*, 28 B.R. 761, 765 (Bankr.E.D.N.C.1983). Larceny, under the federal law, is the

"fraudulent and wrongful taking and carrying away of the property of another with intent to convert such property to the taker's use without the consent of the owner." *Graffice v. Grim*, 293 B.R. 156, 166 (Bankr. N.D.Ohio 2003).

■ As a part of their argument in support of the applicability of this provision, the Plaintiffs rely on the would-be preclusive effect of Defendant's conviction in state court, seeking an application of the doctrine of collateral estoppel. However, as it applies to the argument, it is not settled law whether collateral estoppel can apply from a criminal conviction on a plea of guilty to a subsequent civil proceeding.[3] Notwithstanding, because the Plaintiffs' motion for summary judgment can be sustained in their favor on the merits, without considering collateral estoppel, this issue need not be addressed at this time.

■ The merits of Plaintiffs' complaint, being before this Court on their motion for summary judgment, are subject to the evidentiary standards made applicable to such a motion. Bankruptcy Rule 7056 governs summary judgment motions in bankruptcy, setting forth that "Rule 56

---

**2.** It should be noted that recently, in *Hughes v. Sanders*, the Sixth Circuit Court of Appeals construed very strictly the "payable to and for the benefit of a governmental unit" language of § 523(a)(7) insofar as it concerned an award made in a civil matter. 469 F.3d 475 (6th Cir.2006). This decision, however, has no applicability here as the Court in *Hughes* specifically excluded criminal matters from its reach. (stating "that Kelly applies narrowly to criminal restitution payable to a governmental unit.").

**3.** Bankruptcy courts apply state law to determine the applicability of collateral estoppel. *In Re Calvert*, 105 F.3d 315 (6th Cir.1997). Some Ohio courts, as well as bankruptcy courts applying Ohio law, have refused to apply collateral estoppel, for various reasons, to criminal convictions on guilty pleas. *In Re Harwell*, 349 B.R. 502, 507 (Bankr.N.D.Ohio 2006) ("differing standards of proof, rules of

discovery, and rules of evidence ... militate against giving criminal judgments preclusive effect..."); *In Re Chapman*, 228 B.R. 899, 906 (Bankr.N.D.Ohio 1998)(it is "inequitable to give issue preclusion effect from a criminal proceeding to a later civil proceeding due to the inherent differences in these actions ..."); *Phillips v. Rayburn*, 113 Ohio App.3d 374, 381–82, 680 N.E.2d 1279 (Ohio Ct.App. 1996) ("Procedural and discovery differences ... coupled with defendant's dilemma over whether to testify in his own behalf ... make issue preclusion [an] ... unwise practice"). But at least one Ohio court has given preclusive effect to a guilty plea. *Wloszek v. Weston*, 2004 Ohio 146, 2004 WL 64947 (Ct.App.2004) ("Relitigation in a civil action of an issue determined adversely to the defendant in a prior criminal proceeding is foreclosed, whether the prior determination was based on a verdict of a jury, or on a plea of guilty").

F.R. Civ. P. applies in adversary proceedings." In turn, paragraph (c) of Rule 56 sets forth:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

On this standard, a "material fact" is one whose resolution will affect the disposition of the motion. *Gibson v. Gibson*, 219 B.R. 195, 195 (6th Cir. BAP 1998). A "genuine issue" arises when the record, taken as a whole, could lead "a rational trier of fact to find for the non-moving party." *Kraus v. Sobel Corrugated Containers, Inc.*, 915 F.2d 227, 229 (6th Cir.1990).

On this standard, the Defendant does not contend that the physical acts— i.e., the *actus reus*—necessary to sustain a finding of larceny under § 523(a)(4) are not present.[4] Instead, the Defendant attacks the *mens rea* component of larceny, arguing that summary judgment is inappropriate because "whether the actions of Humphrey constitute an intentional wrongful act is a genuine issue of material fact thereby precluding summary judgment." (Doc. No. 19, pg.4). In this way, the Defendant claims that he was incapable of possessing any wrongful intent due to a "drug-induced manic state" and a resulting obsession with construction equipment. *Id.* at 2. Defendant further claims that he was not stealing Heer's backhoe, but merely "collecting" it. (Doc. No. 19, Ex. A at pg. 13).

However, whatever the merit of these contentions, they are mooted by the circumstances surrounding the Defendant's plea of guilt in the state-court criminal action. To this end, it cannot be legally questioned that the Defendant was competent at the time he entered his plea of guilty in state court. There, the Defendant appeared with his counsel and was described the charges against him, told that judgment would be entered as a result of his plea, and told restitution could be ordered on those counts. The trial court's acceptance of the guilty plea reads: "After addressing the defendant personally and inquiring of the defendant, the Court finds that the defendant understands the nature of the charge(s) and the maximum penalty(ies) involved." (Doc. No. 17, Ex. A, pg.4). The Defendant, at the hearing entering his plea, was also asked if he had anything to add to his attorney's statements, to which he replied, in part, "I understand the responsibility that I took and I played in these crimes and for that I am extremely sorry." He also plainly denied being under the influence of any drugs or medications at the time of his confession. *State v. Humphrey*, 2006 WL 832916 at *5–7.

All of this evidence demonstrates that Defendant was aware of the consequences of his guilty plea at the time of its entry. Thus, as held in the state court appeal, "the transcript of the hearing at which appellant entered his pleas demonstrates that he knowingly and voluntarily did so." *Id.* at *12–26. Coupling then the Defendant's competency at the time of his guilty plea, with the fact that he did not raise the issue of his mental state at that time, leaves this Court in no position to question the Defendant's competency at the time he committed the thefts. Simply put, had the

---

**4.** For reasons unknown, the Defendant, in his responsive brief to the Plaintiffs' motion for summary judgment, does not specifically address § 523(a)(4), but rather directs his arguments to § 523(a)(6) (excepting from discharge debts arising from "willful or malicious" conduct), and not the larceny exception Plaintiffs rely upon from 11 U.S.C. § 523(a)(4). (Doc. No. 19, pg.4).

Defendant been incompetent at the time of the thefts, it must be assumed he would have raised the issue in state court to dispute his guilt; by raising no objection then, the Defendant's silence speaks volumes.

To hold otherwise, would unnecessarily interject this Court in the state-court criminal proceeding. But, as the Sixth Circuit Court of Appeals has noted in the dischargeability context, albeit not under § 523(a)(4), when a state court has made a determination, a bankruptcy court should not engage in second guessing. *Sorah v. Sorah (In re Sorah)*, 163 F.3d 397, 402 (6th Cir.1998) (applying § 523(a)(5)). In the Court's succinct words: "if something looks like a duck, walks like a duck, and quacks like a duck, then it is probably a duck." *Id.* at 401.

Therefore, since it must be presumed that the Defendant was competent at the time he committed the thefts, there exists only one logical outcome: the Defendant committed the act of "larceny" as provided in 11 U.S.C. § 523(a)(4). As such, summary judgment must be entered for the Plaintiffs on both their claims: (1) that involving the restitution order brought under § 523(a)(7); and (2) in accordance with § 523(a)(4), any liability arising from the Defendant's theft of Heer's backhoe. In reaching the conclusions found herein, the Court has considered all the evidence, exhibits and arguments of counsel, regardless of whether they are specifically referred to in this Opinion.

Accordingly, it is

**ORDERED** that, as provided in this Opinion, the Motion for Summary Judgment of the Plaintiffs, Heer Excavating, Inc. and Cincinnati Insurance Company, be, and is hereby, GRANTED.

It is **FURTHER ORDERED** that those claims held by the Plaintiffs, Heer Excavating, Inc. and Cincinnati Insurance Company, against the Defendant, Stephen Humphrey, be, and are hereby, determined to be NONDISCHARGEABLE DEBTS pursuant to 11 U.S.C. § 523(a)(7) and 11 U.S.C. § 523(a)(4).